In re **VITAMINS ANTITRUST LITIGATION.**

Misc. No. 99–197 (TFH).
MDL No. 1285.

United States District Court,
District of Columbia.

June 16, 2003.

---

## ORDER

### RE: *Bioproducts Rule 53 Objections to the Special Master's May 15, 2003 Report and Recommendations*

HOGAN, Chief Judge.

In accordance with the accompanying Memorandum Opinion and the oral ruling made at the June 10, 2003 hearing, it is hereby

**ORDERED** that the Special Master's May 15, 2003 Report and Recommendations is adopted by the Court; it is further hereby

**ORDERED** that Plaintiffs' motion for sanctions is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Plaintiffs' motion is granted and: (a) Bioproducts is ordered to produce one or more Rule 30(b)(6) witnesses who, as to the 11 topics identified in the plaintiffs' January 27, 2003, amended notice of deposition, have been thoroughly educated with respect to any and all facts known to Bioproducts and its counsel, including all outside counsel; (b) Bioproducts and its counsel are ordered to pay plaintiffs' reasonable expenses, including attorneys' fees, incurred presenting the March 7, 2003 motion for sanctions; and (c) Plaintiffs' counsel are ordered to produce competent proof of such expenses and fees in a timely fashion;

(2) Plaintiffs' motion is denied in all other respects. Specifically it is denied to the extent that it seeks an order: (a) precluding Bioproducts from offering evidence or arguing contrary to the statements and admissions made by Bioproducts in its European Commission and Canadian government submissions;[1] (b) requiring Bioproducts to produce *in camera* to the Special Master the source materials related to or used in the preparation of its submissions to the EC and Canada; (c) requiring Bioproducts' Rule 30(b)(6) deposition to be conducted in the presence of the Special Master; (d) requiring Bioproducts' Rule 30(b)(6) deposition to be conducted in Washington, D.C., and (e) assessing costs and fees incurred in preparing for and attending Bioproducts' February 7, 2003, Rule 30(b)(6) deposition and in preparing for and attending the Rule 30(b)(6) deposition or depositions conducted pursuant to this Order; and it is further hereby

**ORDERED** that Bioproducts' motion for sanctions is **DENIED**.

**SO ORDERED.**

## *MEMORANDUM OPINION*

### *RE: Bioproducts Rule 53 Objections to the Special Master's May 15, 2003 Report and Recommendations*

Pending before the Court are the objections pursuant to Fed.R.Civ.P. Rule 53 of Defendant Bioproducts Incorporated ("Bioproducts") to the Special Master's May 15, 2003 Report and Recommendations Respecting Plaintiffs' Motion for Sanctions Against Bioproducts, Inc. and Bioproducts' Motion for Sanctions Against Plaintiffs ("May 15 Report"). Upon careful consideration of the

---

1. The May 15 Report recommended denying the Plaintiffs' request for an Order "deeming Bioproducts' submissions to the European Commission ('EC') and to the Canadian Competition Bureau ('Canada') as authentic for the purposes of Federal Rules of Evidence 901." To the extent that this issue was resolved at the hearing before the Special Master and to the extent that the Special Master recommends granting-in-part Plaintiffs' alternative request to produce a properly educated Rule 30(b)(6) witness, the Court will deny Plaintiffs' original request for an order precluding Bioproducts from offering evidence or argu-

parties' briefs, the May 15 Report, the arguments made at the June 10, 2003 hearing, and the entire record herein, the Court will adopt the May 15 Report of the Special Master. Specifically, the Court will grant in part and deny in part Plaintiffs' motion and will deny Bioproducts' motion.

The Court will grant Plaintiffs' motion and order Bioproducts to produce one or more Rule 30(b)(6) witnesses who are thoroughly educated with respect to any and all facts known to Bioproducts and its counsel as to the properly noticed eleven deposition topics. The Court will also order Bioproducts and its counsel to pay the reasonable costs and attorneys' fees associated with Plaintiffs' presentation of the instant motion for sanctions. The Court will: deny Plaintiffs' request for an evidentiary sanction deeming the submissions to the European Commission and the Canadian government as authentic for the purposes of Federal Rules of Evidence 901; deny the request for Bioproducts to produce *in camera* the source materials related to these governmental submissions; deny for Bioproducts' Rule 30(b)(6) to be supervised by the Special Master and to take place in Washington D.C.; and, deny Plaintiffs' request for costs incurred in the preparation of the February 7, 2003 deposition of Mr. Koenig. Further, the Court will deny Plaintiffs' renewed request (made in its reply to Bioproducts Rule 53 Objection) that Bioproducts Rule 30(b)(6) deposition take place in Washington D.C. and be judicially supervised.

## I. BACKGROUND

Pursuant to discovery requests served on November 20, 2001, and enforced by this Court's Order of December 2002,[1] Biopro-

---

ing contrary to the statements in the governmental submissions.

1. In adopting the recommendation of the Special Master the Court ordered as follows:

   Specifically, the Court will deny plaintiffs' motion to the extent that it seeks to compel production of certain documents submitted to Canada, including the executed Plea Agreement, and drafts of the Plea Agreement, Agreed Statement of Facts, Indictment, Prohibition Order, Immunity Letter, and cover letter to the Agreed Statement of Facts, as well as the

ducts produced to plaintiffs' 572 pages of documents previously submitted to the European Commission ("EC") in 1999 in support of the company's application for non-imposition or reduction of fines in cartel cases and 55 pages of documents submitted to the Canadian government in support of the company's request for leniency in connection with the government's investigation of the choline chloride industry. The EC submission included a timeline created on May 3, 1999 showing 13 meetings and a binder of evidence supporting the timeline. The Canada submission included a timeline of 30 or 31 meetings and a 21 paragraph agreed statement of facts.[2]

On January 27, 2003, as a result of these submissions, Plaintiffs served an amended notice of intent to take the deposition of Bioproducts pursuant to Rule 30(b)(6) on 11 topics relating to the facts and admissions contained in the governmental submissions. Bioproducts served no objections to the noticed deposition topics and designated its president and chief executive officer Stephen E. Koenig to testify as the company's 30(b)(6) representative. Plaintiffs' took Mr. Koenig's deposition on February 7, 2003 in Cleveland, Ohio.

Plaintiffs filed the instant motion on March 7, 2003 arguing that Bioproducts failed to produce an educated witness as required by Rule 30(b)(6). Plaintiffs seek sanctions or in the alternative a judicially supervised deposition of a 30(b)(6) witness education to testify respecting the 11 designated topics. Specifically, Plaintiffs moved for an order (1) to preclude Bioproducts from offering evidence or arguing contrary to the statements in its EC and Canadian government submissions,[3] and (2) to assess both Bioproducts and its

counsel for plaintiffs' costs and attorneys' fees incurred in preparing for and attending Bioproducts' Feb. 7, 2003 deposition and in obtaining relief through the instant motion. In the alternative, Plaintiffs seek an order requiring: Bioproducts to produce a properly educated Rule 30(b)(6) witness for a judicially supervised deposition, Bioproducts to produce in camera the sources materials used to produce the governmental submissions; and, costs and fees incurred.

Bioproducts responded by serving a motion pursuant to Fed.R.Civ.P. 37(a)(4)(B) "for sanctions against Plaintiffs to recover its attorneys' fees and other costs associated with responding to Plaintiffs' motion" and an opposition to Plaintiffs motion for sanctions. Plaintiffs and plaintiff Hill's Pet served replies to which Bioproducts also served a reply.

The Special Master held a hearing on April 24, 2003 on the cross motions for sanctions and issued a Report and Recommendation on May 15, 2003.

## II. SPECIAL MASTER'S RECOMMENDATIONS

The Special Master found that Bioproducts failed to fulfill its obligations under Rule 30(b)(6) and recommends that the Court grant in part and deny in part Plaintiffs' motion. He recommends that the Court:

(1) Order Bioproducts to produce one or more educated 30(b)(6) witnesses who have been educated as to any and all facts known to Bioproducts and its counsel with respect to the properly noticed 11 topics;

(2) Order Bioproducts and its counsel to pay reasonable expenses, including attor-

letters of Bioproducts' counsel commenting on these drafts. The Court will also deny the plaintiffs' motion to the extent that it seeks an award of fees and costs. The Court will grant plaintiffs' motion in part, specifically with respect to the remainder of the documents submitted to Canada, and with respect to all documents submitted to the European Commission.

**2.** The EC timeline and Canadian timeline of conspiracy meetings identified each meeting, the date and location, attendees, subject matter discussed, the Bioproducts documents evidencing meetings or used at the meetings (copies of

which were also provided), and other miscellaneous documents. May 15 Report at 3–4. As each timeline contained essentially the same type of information except the Canadian Timeline referred to more meetings, parties and the Special Master referred to the timeline without distinguishing between the two. *Id.* at 4.

**3.** Originally, Plaintiffs sought an order "deeming" Bioproducts' submissions to the EC and Canada as authentic for the purposes of Fed. R.Evid. Rule 901. This issue was resolved at the hearing before the Special Master. *See* May 15 Report at 6, n.13.

neys' fees, incurred in presenting the instant motion;

(3) Deny Plaintiffs' request for an order deeming Bioproducts' submissions to the EC and to Canada as authentic for the purposes of the Federal Rule of Evidence 901;

(4) Deny Plaintiffs' request to have the source materials for the governmental submissions reviewed *in camera* by the Special Master;

(5) Deny Plaintiffs' request that Bioproducts 30(b)(6) deposition take place in the presence of the Special Master;

(6) Deny Plaintiffs' request for cost associated with preparing for the February 7, 2003 deposition.

## III. BIOPRODUCTS' OBJECTIONS

■ Bioproducts objects to the Special Master's recommended sanctions that it must educate a 30(b)(6) witness as to the noticed topics, including the "truth" of the description of the agreements and other activities in the EC and Canadian timelines; and, that it must pay attorneys' fees.[4] In the alternative, Bioproducts seeks clarification and instruction as to "what the deponent should specifically be instructed to testify as to the truth of the timeline," Obj. at 3, when Bioproducts "legitimately believes it is unable to answer." *Id.* at 1.

Concerning the first objection, Bioproducts claims that "neither it nor its counsel knows or can testify to the truth of the facts stated in the timeline" and that the May 15 Report fails to instruct Bioproducts as to how to respond when it feels it legitimately cannot answer. Bioproducts Obj. at 1. Bioproducts seems to argue that because Bioproducts's counsel prepared the timelines based on interviews of former employees and a review of company documents and because statements

of former employees are imputed to the company by operation of law, that the timelines should stand without explanation. An additional Rule 30(b)(6) deposition, it argues, would yield nothing more than an additional statement that "the documents reflect the company's own statements."

Bioproducts' objection rests on a misinterpretation of Rule 30(b)(6) and a mistaken view that mere authentication of the documents submitted with a corresponding disavowal of the truth or accuracy of the documents is sufficient to satisfy the requirements of Rule 30(b)(6). While at a minimum, Bioproducts' argument is logically far afield and perhaps circular, Bioproducts can point to nothing in the rules or caselaw that would justify its understanding of a sufficient Rule 30(b)(6) deposition.

Rule 30(b)(6) provides that persons designated to represent a corporation "shall testify as to matters known or reasonably available to the organization." As this Court ruled with respect to defendant Takeda, this means that Bioproducts is obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to Bioproducts or its counsel, regardless of whether such facts are memorialized in work product protected documents or reside in the minds of counsel. *See* Nov. 20, 2002 Mem. Op. at 8–9, Order at 2; *see also Paul Revere Life Ins. Co. v. Jafari,* 206 F.R.D. 126, 127 (D.Md.2002) (ordering party to produce 30(b)(6) witness to testify regarding facts obtained by counsel during discovery); Mem. Op. and Order Re: Discovery of Eisai Settlement Negotiations and Statement of Admissions, June 19, 2002 (denying plaintiffs' motion for protective order to preclude defendants from taking 30(b)(6) deposition of plaintiffs regarding facts concerning settle-

---

4. In the alternative, Bioproducts seeks clarification and instruction as to "what the deponent should specifically be instructed to testify as to the truth of the timeline," Obj. at 3, when Bioproducts "legitimately believes it is unable to answer." *Id.* at 1. The Court need not address this somewhat tautologous request. The May 15 Report is clear in recommending that Bioproducts is required to produce a 30(b)(6) witness educated as "all facts known to Bioproducts and its counsel" with respect to the eleven noticed deposition topics. While it is clear that this requires more than the mere authentication of documents, the actual facts known to Bioproducts and its counsel are in their own hands, thus the Court can offer no further guidance as to this issue. The Court points out, however, that many other similarly situated defendants in this litigation have successfully answered such questions.

ment negotiations which were in the sole possession of counsel). Bioproducts does not contest its obligations, but argues instead that its witness, in fact, testified as to the company's full knowledge on all noticed topics.

The Special Master found to the contrary—that Bioproducts failed to discharge its obligations under Rule 30(b)(6) because Mr. Koenig "was inadequately educated as to its full knowledge of the facts respecting each" of the 11 noticed deposition topics. May 15 Report at 2. Further, he found that the failure was "significant, conscious, and material to plaintiffs' discovery in this case" and, therefore, constitutes a failure to appear sufficient for the Court to impose sanctions under Rule 37(d). *Id.* at 45. The Special Master found this "significant" and "conscious" failure after a thorough examination of Mr. Koenig's testimony: he found that Mr. Koenig stated that he had "no knowledge of the facts learned by counsel that formed the basis for the Timeline, and as noted, could not testify as to the accuracy of the Timeline in reflecting those facts." *Id.* at 37. Further, Mr. Koenig was repeatedly unable to answer particular questions because he lacked the knowledge to do so as was stated throughout the deposition. Moreover, the Special Master found that Bioproducts' counsel did "nothing to inform the witness of the factual bases for the [EC and Canadian] submissions." *Id.* at 45. The Special Master found that Mr. Koenig lacked personal knowledge of the conspiratorial events described in the governmental submissions and that he made no effort to obtain such knowledge. He found that Bioproducts waited until the last minute to prepare Mr. Koenig and that no more than a morning was devoted to the effort. He found that counsel did nothing to inform Mr. Koenig as to the factual bases of the governmental submissions. While Mr. Koenig did testify that the timelines reflected the results of outside counsel's investigations, including a review of documents and interviews of employees, he had no knowledge of the facts learned by counsel that formed the basis of the timelines, and he could not testify as to the accuracy of the timelines in reflecting those facts. *Id.* at 37. In sum, the Special Master's review of Mr.

Koenig's deposition is thorough and his assessment is accurate—Bioproducts failed to meet its obligations to produce a Rule 30(b)(6) witness properly educated as to the noticed deposition topics.

█ As mentioned above and as stated in the Special Master's report, Bioproducts' position rests on a misunderstanding of the concept of testimony by a 30(b)(6) witness respecting the knowledge of the corporation he represents. May 15 Report at 39. The corporation as a fictional entity can never know that a fact is true except to the extent its employee or agent does. *Id.* (citing Pl. Reply to Motion for Sanctions at 10). Therefore, knowledge of Bioproducts' employees is "imputed to the corporation itself," *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210 (8th Cir.1973); *see also Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 138 (3d Cir.1988), and this includes, for example, the knowledge of Thomas Sigler, General Manager of Bioproducts' choline division during the relevant period, who according to the Timeline, participated extensively in the conspiracy. *Id.* at 40 (citing BIO 027547–54; 028124–38) (noting in footnote 41 that the Canadian timeline places Sigler at all but two of the 30 or 31 meetings of competitors attended by Bioproducts). Thus, Bioproducts' contention that Mr. Koenig properly refused to testify as to the truth and accuracy of the information set forth in the EC and Canadian timelines is untenable. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996) (a corporation is required to prepare "its Rule 30(b)(6) designee to the extent the matters are reasonably available, whether from documents, past employees, or other sources"); *United States v. Massachusetts Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D.Mass.1995) (rejecting corporations' arguments that it was not required under Rule 30(b)(6) to educate its witness about actions taken by former employees of the corporation); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 civ 3016(AGS)(HB), 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002)(a corporation "must provide its interpretation of documents and events"). Bioproducts must provide a Rule 30(b)(6) witness who can give a factual re-

sponse rather than disclaim knowledge as did Mr. Koenig.

■ Bioproducts also argues that an additional Rule 30(b)(6) deposition is unnecessary because it would result in duplicative discovery. Bioproducts states that there is "simply nothing any additional deponent can add other than what is set forth in the timeline itself," because the source of knowledge of the testimony would be the timeline and the underlying documents—all of which have been produced and authenticated by Mr. Koenig as Bioproducts' documents. Bioproducts' Obj. at 3. In essence, Bioproducts claims that Plaintiffs had full and complete discovery when Mr. Koenig authenticated the timeline.

The Court rejected a similar argument by Takeda when it ordered Takeda to produce an educated Rule 30(b)(6) witness. *See* Mem. Op. Re Plaintiffs' Motion to Compel Takeda, Nov. 20, 2002 at 6. As the Plaintiffs correctly point out, the two forms of discovery are not equivalent. While the governmental submissions constitute admissions by Bioproducts, its Rule 30(b)(6) deposition is a sworn corporate admission that is binding on the corporation. May 15 Report at 41 n. 44. In addition, if there are conflicts among Bioproducts employees regarding facts in the submissions or there are other explanations or interpretations that Bioproducts has regarding the submissions, Plaintiffs are entitled to them now as it is within Bioproducts. Fed.R.Civ.P. 30(b)(6). As this Court has previously stated in its June 21, 2001 Mem. Op. Re: Merits Discovery and as noted by the Special Master, "[i]t is not up to Bioproducts to determine what discovery Plaintiffs need." May 15 Report at 37. Bioproducts argument that the Rule 30(b)(6) discovery is unnecessary and duplicative is without merit.

In summary, Bioproducts' objection to the Special Master's recommendation that Bioproducts be ordered to produce a properly educated Rule 30(b)(6) witness is without merit. The Court will adopt the recommendation of the Special Master with respect to this issue.

■ Concerning Bioproducts' second objection that Bioproducts and its counsel should not be required to pay plaintiffs' costs associated with preparing their motion, here too, the Court finds the reasoning of the Special Master correct and will thus adopt his recommendation. Bioproducts argues that it should not be compelled to pay fees associate with the preparation of the Plaintiffs motion because of the "good faith nature of the dispute." The Special Master found to the contrary—that Bioproducts' failure to educate its Rule 30(b)(6) witness with respect to the corporations' full knowledge concerning every one of the eleven deposition topics was *"significant, conscious and material* to plaintiffs' discovery of their case" and, therefore, that under applicable case law, Bioproducts effectively failed to appear for the purposes of Rule 37(d).[5] May 15 Report at 45–46 (emphasis added) (citing *Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196, 197 (5th Cir.1993)).

Monetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness, unless the conduct was substantially justified. *Id.* at 49; Fed.R.Civ.P. 37(d). Bioproducts has made no showing that its actions were substantially justified. In fact, the Special Master, carefully noting that only once previously has he recommended monetary sanctions (in connection with a motion to compel Tanabe to produce discovery), found that Bioproducts, without justification, failed

---

5. Fed.R.Civ.P. Rule 37(d) provides in pertinent part:

**Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice ... the court in which the action

is pending on motion may make such orders in regard to the failure as are just ... [i]n lieu of any order or in addition thereto, *the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.* Fed.R.Civ.P. 37(d) (emphasis added). The full text of the Rule is attached to this memorandum.

to fulfill its obligations under Rule 30(b)(6) and, "[h]eeding the mandatory language of Rule 37(d)" recommended that the Court order Bioproducts and its counsel to pay Plaintiffs' reasonable fees associated in presenting the instant motion. May 15 Report at 49 (citing *SEC v. Hiestand,* Civ. No. 94-2633(RCL), 1997 WL 459853, at *3 (D.D.C. July 31, 1997)).

Turning specifically to Bioproducts' objection to the imposition of a sanction against *counsel,* the Special Master found that the actions of Bioproducts were conscious and without justification. *Id.* Plaintiffs point out that Bioproducts' conduct was at the urging of, and with full support of, Bioproducts' counsel. During Mr. Koenig's deposition, Bioproducts' counsel repeatedly stated that Mr. Koenig could not testify regarding the factual bases for, and accuracy of, the governmental submission, and even instructed Mr. Koenig not to answer the questions in this regard and attacked Plaintiffs' questions as improper. For example, during the deposition, Plaintiffs asked Mr. Koenig whether, *as expressly stated in the submission to Canada,* Bioproducts admitted that it had entered into an agreement with other choline chloride producers. Bioproducts' counsel stated, "Objection, I'll instruct him not to answer. It is outside of his factual knowledge and outside the subject of the 30(b)(6) deposition notice, and certainly outside of any proper scope of a 30(b)(6) notice ... I didn't prepare any Bioproducts witness to make such an admission to you. Nor will I ever." Koenig Tr. 661–64. This testimony seems to reflect an intransigence beyond the bounds of zealous advocacy. Either Bioproducts' and its counsel consciously and without justification failed to fulfill the obligations under Rule 30(b)(6) as the Special Master found, or counsel's fundamental misapprehension of those obligations and the Federal Rules led to its failure. It is hard to imagine that counsel could have made the latter mistake. The recommendations of the Special Master with respect to the imposition of monetary sanctions against Bioproducts and its counsel will be adopted by the Court.

## III. PLAINTIFFS' REQUEST FOR A JUDICIALLY SUPERVISED DEPOSITION

In responding to Bioproducts' Rule 53 objection, Plaintiffs requested that the Court order Bioproducts' Rule 30(b)(6) deposition to be judicially supervised and to take place in Washington, D.C. This was not made in the form of an objection to the May 15 Report which recommended denying the request for judicial supervision but was made light of Bioproducts' objections which, according to Plaintiffs, "raise significant concerns that Bioproducts will again fail to comply with its Rule 30(b)(6) obligations at the retaking of its Rule 30(b)(6) deposition ...." Pls. Resp. to Bioproducts Obj. at 4. The Court is not persuaded. As the Special Master noted in his report, the requests are reasonable, but the Court should be able to rely on Bioproducts and its counsel to comply with the letter and spirit of the May 15 Report and the Court's Order resulting therefrom. The Special Master will be available by telephone and will be able to rule on such issues.

## IV. CONCLUSION

For the foregoing reasons and as stated at the June 10, 2003 hearing, the Court will adopt the May 15 Report and Recommendations of the Special Master Respecting Plaintiffs' Motion for Sanctions Against Bioproducts, Inc. and Bioproducts' Motion for Sanctions Against Plaintiffs. Thus, the Court will grant in part and deny in part Plaintiffs' Motion and will deny Bioproducts' Motion. An appropriate Order will accompany this Opinion.