Roy BANKS, Plaintiff,

v.

OFFICE OF THE SENATE SERGEANT–
AT–ARMS and Doorkeeper,
Defendant.

CIV.A. Nos. 03–56HHKJMF,
03–868HHKJMF, 03–
2080HHKJMF.

United States District Court,
District of Columbia.

May 3, 2004.

William P. Farley, John F. Karl, Jr., Mc-Donald & Karl, Washington, DC, for Plaintiff.

Katherine Anne Goetzl, Ronald I. Tisch, Littler Mendelson, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This Title VII case has now generated eighteen motions that must be resolved. The motions fall into two categories. First, there are procedural motions, some of which ask the presiding judge, Judge Kennedy, to modify deadlines he has set for the end of discovery and the filing of dispositive motions. These motions are not before me, but I have resolved others that seek the modification of deadlines pertaining to discovery motions. Second, there are discovery motions filed by the parties seeking various forms of relief and they are before me.

## INTRODUCTION

Roy Banks ("plaintiff"), an employee of the Senate Sergeant–at–Arms ("SAA" or "defendant") claims that 1) he was denied a promotion to branch manager because of his race or sex; 2) he was retaliated against for seeking counseling with the Office of Compliance; 3) he was subjected to a hostile work environment based on his race, age, alleged disability, or sex; 4) he was discriminated against because of his sex; 5) he was denied leave under the Family and Medical Leave Act because of his sex, race, or the fact that he filed complaints of discrimination; 6) he was denied an accommodation for his disability; 7) he was denied disability leave; 8) he was terminated because of his race, age, alleged disability, sex, or in retaliation; and 9) SAA improperly handled his compensation claims. *Defendant's Motion for Summary Judgment,* page 1.

## DISCUSSION

### I. *Procedural Posture*

Some of the motions filed by the defendant, SAA, seek to compel plaintiff to provide discovery. Both plaintiff and defendant have filed numerous discovery motions. However, defendant has also moved Judge Kennedy to extend the time within which to complete discovery and file motions for summary judgment. Judge Kennedy, however, did not rule on defendant's motion for an extension of the previously established deadlines for the completion of discovery and the filing of motions for summary judgment. Confronted with these deadlines, SAA filed its motion for summary judgment. Despite that filing, I will now resolve the outstanding discovery motions in the order they were filed.

1. Unless otherwise indicated, references to a "Rule" are to the Federal Rules of Civil Procedure.

2. In the reported cases, the courts have not been consistent. Courts have refused to make a change at all, re-opened discovery to permit the movant to interrogate the witness as to the change she wishes to make, permitted the change (leaving to the court the task of assessing the significance of the change for the motion before it), or permitted the change only upon a particular showing. *See Burn v. Board of County Commissioners,* 330 F.3d 1275, 1282–83 (10th

### II. *Analysis*

#### A. *Plaintiff's Motion to Strike Portions of Alvin Macon's Errata Sheet [# 20]*

Rule [1] 30(e) of the Federal Rules of Civil Procedure grants a witness the right to make changes in form or substance in her deposition provided the witness signs a statement indicating the changes and the reasons for them.

█ If a motion for summary judgment has been filed, the witness's modifying what she said can so disrupt the movant's legal arguments that courts may hesitate to permit the change despite the literal command of Rule 30(e) that it be permitted.[2]

█ It is clear, however, that SAA is not relying on either Macon's testimony as given or as to be corrected to establish that there is no genuine issue of material fact and SAA is entitled to judgment. I have reviewed that motion and its attachments and cannot find a single reference to Macon, let alone his deposition. The motion to correct the deposition is, therefore, academic and raises a question that is beyond the court's jurisdiction and must be denied. *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

If the motion for summary judgment is denied and Macon is called as a witness and impeached with the portion of the deposition he is trying to correct, there will still be time enough to consider Macon's application. Until that occurs, however, the question presented by this motion is premature, hypothetical and non-justiciable. *Id.*

Cir.2003); *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 103 (2d Cir.1997); *Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1242 (10th Cir. 2002); *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir.2000); *Summerhouse v. HCA Health Services of Kansas,* 216 F.R.D. 502 (D.Kan.2003); *Pepsi–Cola Bottling Co. v. Pepsico, Inc.,* 2002 WL 511506 (D.Kan.2002); *Walker v. Yellow Freight Systems, Inc.,* 1999 WL 955364 (E.D.La. Oct. 19, 1999); *Rios v. Welch,* 856 F.Supp. 1499 (D.Kan.1994); *Rios v. Bigler,* 847 F.Supp. 1538 (D.Kan.1994).

### B. Defendant's Motion for a Protective Order from Supernumerary Interrogatories [# 29]

#### 1. The Problem

By his Order of January 5, 2004, Judge Kennedy restricted the parties in these three consolidated cases to 30 interrogatories. Before that Order had issued, plaintiff served two sets of interrogatories. According to plaintiff, the first set of interrogatories was comprised of nineteen questions and the second eight, for a total of twenty-seven. SAA sees it differently, insisting that one question in the first set (number 8) and seven in the second set (numbers 1–6 & 8) contained subparts and, when those subparts are counted as separate interrogatories, plaintiff has propounded many more interrogatories than Judge Kennedy permitted by the January 5, 2004 Order.

#### 2. Analysis

When Rule 33(a) was amended to limit the number of interrogatories that can be propounded, the draftsmen appreciated that the numerical restriction could be evaded by "joining as 'subparts' questions that seek information about discrete separate subjects." Fed.R.Civ.P. 33 advisory committee's note. Therefore, the numerical limitation in the rule is stated as "not exceeding 25 in number including all discrete subparts." Fed. R.Civ.P. 33(a).

Identifying a "discrete subpart" has proven difficult. While a draconian approach would be to view each participial phrase as a subpart,[3] the courts have instead attempted to formulate more conceptual approaches, asking whether one question is subsumed and related to another or whether each question can stand alone and be answered irrespective of the answer to the others. *Kendall v. GES Exposition Services,* 174 F.R.D. 684 (D.Nev.1997). But, as another court has stated, this is anything but a bright-line test. *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D.Cal.1998). It may also beg the question presented.

Perhaps a more pragmatic approach, reminiscent of Justice Stewart's memorable "definition" of pornography,[4] would be to look at the way lawyers draft interrogatories and see if their typical approaches threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate.

The first and most obvious example is the combining in a single interrogatory of a demand for information and a demand for the documents that pertain to that event. Clearly, these are two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred. Thus, a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories.

Lawyers, sensitive to the numerical restriction, also subdivide interrogatories so that after they introduce a topic, they demand to know in detail all the particulars about it, frequently introducing their specific demands with the phrase "including but not limited to." Thus, they may ask their opponent to state whether a particular product was tested and then demand to know when the tests occurred, who performed them, how and where they were conducted and the result. In such a situation, all the questions relate to a single topic, testing, and it would unfair and draconian to view each of the demands as a separate interrogatory. This approach ends, however, the moment the interrogatory introduces a new topic that is in a distinct field of inquiry. Thus, in the "testing" example, asking how the results of the tests were used in any advertising about the product's fitness for a particular purpose would have to be viewed as a separate interrogatory.

After reviewing the interrogatories at issue, I find myself agreeing with SAA as to interrogatory 8 of the first set and interrogatories 2, 5, 6, and 8 of the second set, insofar as these interrogatories first demand infor-

---

**3.** See *Valdez v. Ford Motor Co.,* 134 F.R.D. 296 (D.Nev.1991).

**4.** *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (Stewart J., concurring) (stating, as to pornography, "I know it when I see it").

mation and then demand the documents pertaining to it.

I also find, however, that SAA is arguing in favor of using the draconian approach of counting every subdivision of an interrogatory as a separate question. I rejected that method as unfair. For example, in objecting to interrogatory 4 of the second set, SAA insists that asking about what duties plaintiff was given or had taken away is distinct from asking who added them or took them away. Those two topics are too intimately and logically connected to have to be divided into two separate questions.

However, since several of the remaining interrogatories do speak to more than one topic, they must be counted as more than one. I will now explain what I mean more specifically as to each of these interrogatories.

### a. *Interrogatory 2 of the Second Set*

 In addition to demanding documents, this interrogatory raises three topics: 1) plaintiff's evaluations, 2) plaintiff's loss of certain duties because of them, and 3) what information was provided to the evaluators and from whom did it come. Thus, including the demand for documents, I find that this compound question should be counted as four interrogatories.

### b. *Interrogatory 3 of the Second Set*

 This interrogatory speaks first to the SAA's general hiring practices and then to the hiring of the person for the position of Manager for the Capitol Facilities. As those are separate topics, this question should be counted as two interrogatories.

### c. *Interrogatory 6 of the Second Set*

 This interrogatory speaks to two distinct topics: 1) the determination that plaintiff was not entitled to disability leave and 2) the number of employees in the past ten years who were denied disability leave. Since this question also seeks documents, it should be counted as three interrogatories.

By my calculations, plaintiff propounded eight more interrogatories than permitted.[5] I can either grant plaintiff leave to exceed the number permitted by Judge Kennedy's Order, permit plaintiff to propound a new set of interrogatories that complies with the Order, or grant a protective order, relieving the SAA of the obligation to answer the last eight interrogatories to which SAA objected, interrogatories 4, 6, and 8.

I will not grant plaintiff leave to exceed the number of interrogatories permitted by Judge Kennedy; judicial orders are to be obeyed, not ignored. I appreciate that some sections of the interrogatories that demand documents may just as easily be considered Requests for Production of Documents. I do not know whether plaintiff propounded any such Requests and if it did not, it may not be necessary to issue a protective order because once the demand for documents now made in the interrogatories are formulated as Requests for Production, SAA may be willing to answer the interrogatories that remain.

To solve this problem, I am going to demand that the parties do something that, in my judgment, they have yet to do: cooperate. The pleadings in this case indicate to me that these lawyers have all but ignored the obligation imposed by Rule 7(m) of the Local Civil Rules, that they conscientiously attempt to resolve discovery matters before presenting the issue to the court. While the parties claim in their motions that they have fulfilled this responsibility, all they seem to do is to exchange nasty letters and equally nasty phone calls. I now will provide them with the opportunity to forge a compromise. I expect them to meet and attempt to agree on what documents will be exchanged and what interrogatories will be answered, now that they have the benefit of my thinking. I certainly hope that they can resolve their differences and relieve themselves and the court of further time and expense. If they cannot resolve their differences, within two weeks, they shall advise me by *praecipe* that they cannot and I will return to the issues presented by this motion.

---

5. Plaintiff propounded twenty-seven interrogatories but in my view they should be counted as thirty-eight. Plaintiff was entitled to propound thirty, leaving a balance of eight.

**12**

### C. Defendant's Motion to Compel Discovery From the Office of Compliance ("D's Mot. to Compel") [# 36]

Plaintiff invoked the mandatory conciliation and mediation provisions of the Congressional Accountability Act, 2 U.S.C. § 1401–1403 ("CAA").[6] In a prior opinion, I stated of these provisions:

In subjecting agencies within the legislative branch to monetary liability for claims of race and other discrimination, Congress created a system that requires an employee of such an agency who complains of such discrimination to engage first in counseling and then mediation. 2 U.S.C.A. §§ 1401 & 1402 (1997). Once counseling and mediation have ended, the employee must make an election. *161 He can either file an action in a district court or initiate an administrative proceeding by filing a complaint with the Office of Compliance. 2 U.S.C.A. § 1404 (1997). If the employee chooses the administrative remedy, a hearing officer resolves the case and either party may appeal that officer's decision to the Board of Directors of the Office of Compliance. 2 U.S.C.A. § 1406 (1997). Appeal of the decisions from this Board lies in the United States Court of Appeals for the Federal Circuit. 2 U.S.C.A. § 1407(a)(1).

Congress has elected to shield portions of this process from public inquiry. First, all counseling and mediation "shall be strictly confidential." 2 U.S.C.A. § 1416(a) & (b) (1997). Additionally, "all proceedings and deliberations of hearing officers and the Board, including any related records, shall be confidential." 2 U.S.C.A. § 1416(c) (1997). The only exception pertinent here would be for the final decisions specified in 2 U.S.C.A. § 1416(f) (1997), i.e., those made by a hearing officer or the Board of Directors in favor of an employee or by the Board if it has reversed the decision of a hearing officer in favor of an employee. 2 U.S.C.A. § 1416(f) (1997).

*Waters v. United States Capitol Police Board,* 216 F.R.D. 153, 161 (D.D.C.2003).

SAA served a subpoena upon the Office of Compliance, created by Congress to, *inter alia,* supervise the counseling and mediation processes, demanding production of the documents plaintiff submitted to the Office of Compliance, including his requests for counseling and mediation and the documents provided him. D's Mot. to Compel, Exhibit 1, Schedule A.

The Office of Compliance, citing the confidentiality provisions of the CAA, discussed in my earlier opinion, resisted surrendering the forms that plaintiff filled out to commence the conciliation process in the six instances where plaintiff invoked the process. SAA insists that the documents alone will permit it to ascertain whether plaintiff in fact exhausted the administrative remedy. *See Halcomb v. Office of the Senate Sergeant-at-Arms,* 209 F.Supp.2d 175 (D.D.C.2002) (administrative remedy provided by the CAA must be exhausted as pre-condition to suit in the District Court).

I believe that in its present posture this case does not present an actual question for me to decide. Whatever may be the proper resolution of the abstract question that is raised by the enforcement of a subpoena issued by the employing agency and refused by the Office of Compliance, the real question is whether the plaintiff, having elected to pursue a case in the District Court, may nevertheless insist that the confidentiality provisions of the CAA bar its opponent from seeing the documents he filed to invoke the conciliation process when those documents are relevant to a defense that the employing agency wishes to investigate and, if appropriate, assert. Thus, in my view, I am going to insist that plaintiff show cause why I should not order the Office of Compliance to comply with the subpoena. If plaintiff has no objection, I will hear from the Office of Compliance as to why it should still not be compelled to comply with the subpoena. I will permit SAA to be heard as to all issues presented, once plaintiff responds to the order to show cause.

---

**6.** All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

D. *Defendant's Motion to Compel Discovery from Plaintiff* [# 37]

Defendant claims insufficiencies in plaintiff's responses to interrogatories and requests to produce documents.

### 1. *Interrogatories*

In interrogatories 1 and 2, SAA asked how Count III and Count IV of the complaint set forth a distinct cause of action from Count II and what legal theories animated Counts III and IV. In response, plaintiff first objected on the grounds that the question "seeks an answer to a pure question of law" but then proceeded to provide a lengthy answer.

██ First, plaintiff's objection is inappropriate. A party's opinions and contentions *are* discoverable by interrogatory. *See* Fed. R.Civ.P. 33(c) & advisory committee's note ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."). Asking a party how one count of his complaint differs in its legal theory from a second count is perfectly legitimate.

Second, I have read the answers plaintiff provided, and I am afraid that I do not understand how the answers to the interrogatories actually speak to the question presented. Plaintiff will, therefore, have to provide a much clearer explanation of how the counts differ in legal theory from each other. The crucial point is not what evidence plaintiff will tender in support of each count but how the claim made in one count is different from and not duplicative of another.

I disagree, however, with SAA's contention that plaintiff's answer to SAA's interrogatory 11, that asked plaintiff to indicate how he was victimized by sexual discrimination, is inadequate and find that it answers the interrogatory sufficiently.

### 2. *Requests for Production of Documents*

#### a. *Fee Agreements*

██ Plaintiff refuses to produce his fee agreement with his counsel. While I agree

that agreements as to fees are not privileged,[7] they become relevant, at best, when plaintiff prevails and seeks a fee. Whether such agreements are discoverable and whether plaintiff waived the privilege by his allegedly untimely response to the request to produce can wait until then. In the meanwhile, I reject the notion that there may be someone else paying counsel's fees other than plaintiff as too fanciful to justify compelling production of the fee agreement. Furthermore, assessing one's settlement posture by knowing what one's opponent is paying counsel is not a legitimate use of discovery; discovery seeks relevant evidence, not ammunition for settlement discussions, as welcome as they may be.

#### b. *Mitigation*

SAA propounded three requests for documents pertaining to plaintiff's seeking and securing work since being fired and to his application (if any) for disability retirement. Resisting SAA's motion to compel a response, plaintiff represents to the court, through his counsel, that plaintiff "does not have any documents that he did not turn over to Defendant." *Banks' Opposition to the Sergeant-at Arms' Motion to Compel Discovery from Plaintiff* at 15. I will, therefore, deem plaintiff to have represented by his counsel, an officer of this court, that there are no documents sought by any of SAA's Requests for Production of Documents that have not been turned over to SAA. If that representation proves not to be correct, SAA may seek sanctions.

E. *Plaintiff's Motion Pursuant to Rule 37 to Compel Defendant to Answer Plaintiff's Request for Interrogatories* ("P's Mot. to Compel") [# 38]

Plaintiff moves the court to order defendant to answer fully and completely Plaintiff's First Set of Interrogatories, Request Numbers 2, 4, 5, 16, and 18.[8] I will consider each Interrogatory Request in turn.

---

7. Edna Selan Epstein, *The Attorney Client Privilege and the Work–Product Doctrine*, at 67 (4th ed.2001).

8. Defendant has agreed to supplement Request Numbers 6, 8, 10, 12, 13, and 14 but has not yet provided the supplemental responses. It shall do

### 1. *Interrogatory Number 2*

Plaintiff's Interrogatory Number 2 states: Identify by name, current address, job title, and telephone number each and every person with knowledge of the facts which are the subject of this lawsuit, such identification shall include a summary of the facts and information for each witness defendant expects to testify in this matter on behalf of defendant.

In response, defendant provided the names and contact information of several managers at SAA, as well as the subjects about which each person had knowledge. Two witnesses were listed as having knowledge about "the selection process used in 2001–2002 regarding the Branch Manager of Capitol Facilities position." P's Mot. to Compel, Exhibit B at 5–6. Another witness was identified as the selecting official. *Id.* at 6. Defendant also stated that it had not yet identified the witnesses whom it intends to call at trial. P's Mot. to Compel at 7–8.

Plaintiff contends that defendant's response is inadequate and that he is entitled to discover: 1) additional information regarding other terminated employees, including their race and 2) personnel information concerning the officials involved in selecting the finalists for the Manager of Capitol Facilities and in making the decision to terminate him. *Id.* Plaintiff also insists that defendant has refused to disclose the names of other employees that have information regarding the facts underlying the instant lawsuit. *Id.* at 8.

Defendant claims that in his motion, plaintiff seeks information that he did not seek in the initial interrogatory, namely information regarding other terminated employees. *Defendant's Opposition to Plaintiff's Motion to Compel Defendant to Answer Plaintiff's Request for Interrogatories* ("D's Opp. to Mot. to Compel") at 6. Defendant also argues that he should not be compelled to respond to Interrogatory Number 2 because it seeks information protected by the work-product privilege, *i.e.*, the identification of his trial witnesses and a summary of their expected testimony. *Id.* at 3. In addition, defendant maintains that the interrogatory is ambiguous and overbroad because it seeks all witnesses with knowledge of the "facts" that are the "subject of this lawsuit." *Id.* at 5–6. Rather, according to defendant, because plaintiff included a wide variety of allegations in his complaints and because he failed to clarify the information he sought before filing the instant motion, defendant should not be required to provide any additional information in response to this interrogatory. *Id.*

█ Defendant is, in part, correct in its argument. Plaintiff is not entitled to discover information about "other terminated employees, including their race" because that information was not requested in the interrogatory. Plaintiff is only entitled to discover potential witnesses with knowledge of facts underlying the lawsuit. As defendant points out, however, plaintiff's complaints contain many allegations, and determining "each and every person" who may have knowledge of each fact alleged by plaintiff may be near impossible. In addition, in his motion, plaintiff names the very witnesses he wants defendant to disclose. For example, plaintiff lists the names of SAA employees he believes have knowledge of the facts underlying the lawsuit. P's Mot. to Compel at 8. In addition, plaintiff states that, *via* the depositions of other witnesses, he has learned the identity of the official who made or confirmed the decision to terminate him. *Plaintiff's Reply in Further Support of His Motion to Compel Defendant to Answer Plaintiff's Request for Interrogatories* ("P's Reply to Mot. to Compel") at 5–6.

Therefore, I will order defendant to provide the business addresses and phone numbers of the witnesses plaintiff has named in his motion and reply: Alvin Macon, Karen Miller, Karen Ellis, Mr. Banks' warehouse co-workers, Ms. Goldring, Ms. Coates, Keith Kennedy, Mr. Pickle, Catherine Brooks, and Ann Harkins. In addition, even though it may be impossible to identify each and every person who knows something—no matter how trivial—about the instant action, the Federal Rules of Civil Procedure require parties, as part of their initial disclosures, to provide "the name and, if known, the address

so within 30 days of the issuance of this Memorandum and Opinion.

and telephone number of each individual *likely to have discoverable information* that the disclosing party may use to support its claims or defenses...." Fed.R.Civ.P. 26(a)(1)(A) (emphasis added). In addition, it is not only appropriate but also necessary for defendant to identify with specificity the people who were the decisionmakers in this case. Therefore, I will order defendant to identify clearly all individuals who reviewed or supervised plaintiff's work and all individuals who reviewed his application for the position he sought. Defendant must also disclose the officials that: 1) narrowed the candidate list to two finalists, 2) made the final selection for the Branch Manager position, and 3) decided to terminate Mr. Banks.[9]

■ If a potential witness is an employee of the defendant and defendant agrees to produce for deposition or trial its employees upon reasonable notice, defendant must provide plaintiff with the witness' work address and phone number. *See Waters v. United States Capitol Police Board,* 216 F.R.D. 153, 164–65 (D.D.C.2003) (stating that, under similar circumstances, providing home contact information would be unnecessary). Otherwise, defendant must provide that witness' home address and phone number if they are known.

As for witnesses expected to be called at trial, I will not order defendant to disclose their names, nor will I order defendant to produce a summary of the witnesses' anticipated testimony. Such a request is premature. Under the local and federal rules, a party must provide such information, but it need not do so until it makes its pretrial disclosures, at least thirty days before trial or upon submission of its pretrial statement. Fed. R. Civ. Pro. 26(a)(3); LCvR 16.5(b). Since no trial date has yet been set in this case, defendant has no obligation to reveal the witnesses it may call. In addition, requiring defendant to disclose the names of witnesses he anticipates calling would violate the work-product privilege. As I explained in another case:

Defendant is not entitled to the exact list of witnesses planning to testify as of this date. Fed.R.Civ.P. 26(a)(3) only requires the plaintiff to give names of certain witnesses who plaintiff expects to testify at trial, at least 30 days prior to trial or upon submission of his pretrial statement. Local Rule 209(b)(1)(iv). Thus, the plaintiff has no duty to disclose the exact witnesses he intends to call until then.... The disclosure defendant requests of the names of the witnesses who provided statements to plaintiff's counsel crosses the boundary into work product because the names requested are interwoven with the preparation of plaintiff's case. Here, the plaintiff decided from all of the employees of the IRS with potentially relevant information who he wanted to interview. Clearly such decisions constitute "strategy" and a lawyer's "mental process" in preparing for litigation. This information is therefore work product and not discoverable information.

*Chiperas v. Rubin,* No. CIV.A. 96–130, 1998 WL 531845, at *1 (D.D.C. Aug. 24, 1998).

### 2. *Interrogatory Number 4*

Plaintiff's Interrogatory Number 4 states: Identify by name, address, and social security number and position applied for, all persons who have applied for any position at the Office of the Senate Sergeant at Arms and Doorkeeper of the Senate which Plaintiff applied to, whether the application was oral or written during the period of December 1995 through the present, including the date of the application and whether the person was ultimately hired.

Defendant objects to this interrogatory on grounds of relevance, overbreadth, undue burden, and invasion of privacy of third parties. D's Opp. to Mot. to Compel at 8–9. In response to the interrogatory, defendant stated that 267 people applied for the position of Branch Manager of Capitol Facilities and that plaintiff and Ralph Rouse, the selectee, were the only two finalists.

---

9. The identities of some of these individuals may have already been provided to Mr. Banks *via* deposition testimony or other discovery methods, but to clarify matters, especially in light of the

barrage of discovery disputes currently before the court, I will order defendant to provide this information in a single document.

Plaintiff finds defendant's response to be inadequate [10] because it failed to identify any of the 265 other applicants. Plaintiff summarized his dissatisfaction and frustration with defendant's responses by stating that he believes he is entitled to discover "whether all of the African–Americans who applied for the position were similarly or better qualified than Rouse." P's Mot. to Compel at 9.

Defendant maintains that the names and qualifications of the 265 applicants, besides plaintiff, who were not selected as finalists and, therefore, not presented to SAA for consideration are irrelevant. D's Opp. to Mot. to Compel at 9. Defendant also claims that disclosing such information would constitute an unwarranted intrusion into the privacy rights of the other applicants. *Id.* at 9–10.

■ Defendant is correct. The names and qualifications of the 265 applicants who were not chosen to be finalists are irrelevant to whether the selecting official discriminated against plaintiff when he chose Mr. Rouse. In addition, while the information may be relevant to whether the initial review of applicants was discriminatory, plaintiff cannot claim that he was discriminated against during the first round of application decisions because he survived that round and was named as a finalist. In addition, knowing the identities of the 265 applicants would only be helpful to plaintiff if he knew their races, but plaintiff did not seek that information in the interrogatory and defendant has stated that it did not collect data on the applicants' racial backgrounds. Therefore, the information requested in Interrogatory Number 4 is irrelevant to plaintiff's lawsuit, and I will not compel defendant to respond.

10. Plaintiff also criticizes defendant's response because defendant failed to provide contact information for Mr. Rouse. However, Mr. Rouse's contact information was provided in response to Interrogatory Number 2. Plaintiff also objects to defendant's failure to provide information regarding whether the other 265 applicants were ultimately hired in the Branch Manager position or another position. As defendant explains in its opposition, however, this criticism is frivolous. D's Opp. to Mot. to Compel at 8 n. 7. Because defendant explained that Mr. Rouse was hired for the position, it can be easily inferred that

### 3. *Interrogatory Number 5*

Plaintiff's Interrogatory Number 5 states: For each of the employees identified in Number "4" above, state with specificity each and every reason why each employee was offered a position or the reasons the person was not offered a position.

In light of my discussion regarding Interrogatory Number 4, I will similarly not compel defendant to provide this information.

### 4. *Interrogatory Number 16*

Plaintiff's Interrogatory Number 16 states: Please completely identify all witnesses you expect to call at trial, including the expected nature of their testimony.

For the reasons stated in my discussion of Interrogatory Number 2, I will similarly not order defendant to provide plaintiff with this information.

### 5. *Interrogatory Number 18*

Curiously, in his motion to compel, plaintiff lists Interrogatory 18 but fails to explain why he is seeking a court order compelling defendant to respond more fully to this interrogatory. Defendant also fails to address the particulars of Interrogatory 18.[11] Because neither party addressed the merits of this request, I will not compel defendant to file any supplemental responses to this interrogatory.

### F. *Defendant's Motion for a Protective Order from Plaintiff's Request for Admissions; Request for Expedited Ruling* ("D's Mot. for P.O.") [# 47]

■ Defendant has moved the court for a protective order from answering plaintiff's 150 requests for admission, claiming that re-

none of the other 266 applicants were selected for the job. In addition, because plaintiff applied only to be Branch Manager, that is the only position for which information was sought in this interrogatory. *Id.*

11. Ostensibly because of defendant's failure to address Interrogatory Number 18, plaintiff states that defendant "concedes the motion" as to Interrogatory Number 18. P's Reply to Mot. to Compel at 10.

quests for admissions were not timely served. D's Mot. for P.O. at 1.

Plaintiff's requests for admissions were hand-delivered on January 20, 2004. *Id.* at 3. Under Rule 36, defendant's response was due on February 19, 2004, thirty days after the requests were served. However, according to the court's original scheduling order, all discovery was scheduled to close by February 17, 2004. Therefore, under the original scheduling order, the requests for admission were untimely. *See* Fed.R.Civ.P. 36; *Gluck v. Ansett Australia Ltd.*, 204 F.R.D. 217, 219–20 (D.D.C.2001) (finding that the "text, structure and purpose of the federal rules ... suggest that service of plaintiff's requests for [admissions] was subject to the discovery deadline"). *See also Toone v. Fed. Express Corp.*, No. CIV.A. 96–2450, 1997 WL 446257, at *8 (D.D.C. July 30, 1997) (finding that plaintiff's motion to compel responses to his requests for admissions should be denied because of untimely service, failure to file a motion to extend the discovery deadline, and failure to file a motion to shorten the time for defendant's response).

On February 5, 2004, however, the court granted defendant's motion to amend the discovery schedule.[12] Under the amended order, discovery was set to close on February 24, 2004. The court also extended each party's deadlines for responding to outstanding discovery by one week. Thus, according to defendant, its new deadline to respond to the requests for admission was February 26, 2004. *Id.* at *3.

Under the original scheduling order and according to the revised discovery schedule, the requests for admissions were untimely. However, plaintiff barely missed the deadline. He served the requests 28 days before the close of discovery, and defendant's duty to answer the requests fell only two days outside the prescribed discovery period.

These facts are clearly distinguishable from the eleventh-hour situations in which this court has protected a party from answering untimely requests for admissions. In *Gluck v. Ansett Australia Ltd.*, plaintiff submitted requests for admissions within one week of the discovery deadline. *Gluck*, 204 F.R.D. at 218. In *Toone v. Fed. Express Corp.* the requests for admissions were served on the same day that discovery was set to close, and under the Rules, the defendant had until the day of the original trial date to respond. *Toone*, 1997 WL 446257, at *8.

In a situation more analogous to this one, the Southern District of New York required a party to respond to untimely requests for admissions because: 1) they were only untimely by a day or two, 2) counsel explained that they were served on a Monday after a messenger failed to pick them up on a Friday, and 3) the parties still had two months before the close of expert discovery. *Revlon Consumer Products Corp. v. Estee Lauder Cos.*, No. CIV.A. 5960, 2001 WL 521832, at *1 (S.D.N.Y. May 16, 2001). Similarly, plaintiff in this case missed the deadline by only two days, and his counsel explained that the requests were supposed to be delivered 4 days earlier. Because of an emergency closing at defendant's office and an intervening holiday weekend, however, the requests were served the following Tuesday. *Plaintiff's Opposition to Sergeant–at–Arms' Motion for Protective Order* at 3. In addition, it was defendant that moved to enlarge the discovery period, and it did so without bringing to light this deadline dispute. In light of all of these factors, I will order defendant to respond to plaintiff's 150 requests for admissions within 30 days of the date of this Memorandum Opinion. Given the confusion surrounding the deadlines, however, I will not grant plaintiff's cross-motion for attorney's fees and costs [13] related to this motion.

---

12. The court ordered: "The defendant shall have an additional week to respond to discovery and to file any opposition or reply briefs; plaintiff shall have an additional week to respond and to file any opposition or reply briefs. The discovery cut-off date is extended to February 24, 2004." February 5, 2004 Minute Entry.

13. *See Opposition to the Seargent–At–Arms' Motion for a Protective Order from Plaintiff's Request for Admissions and Cross Moves for the Award of Attorney's Fees and Costs* [# 55].

G. *Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(B)(6) Notice of Video Deposition [# 57] and Plaintiff's Motion to Preclude Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6) Notice of Deposition and Request for Attorneys' Fees and Costs [# 59]*

On February 10, 2004, plaintiff served a notice of deposition upon SAA pursuant to Rule 30(b)(6). It listed 35 topics on which testimony was sought. On February 18, 2004, SAA advised plaintiff's counsel that SAA would be moving for a protective order within two days time. Plaintiff indicated he would nevertheless go forward with the deposition on February 23, 2004, a Monday. On February 20, 2004, SAA did file a motion for protective order objecting to several of the 35 topics as irrelevant because they dealt with a matter (workmen's compensation claim) that was the subject of a pending motion to dismiss. Thus, SAA filed its motion for a protective order on Friday afternoon and the deposition proceeded the following Monday. Since neither Judge Kennedy nor I sleep here on the weekends, it was impossible for either of us to rule on the motion for a protective order; indeed, plaintiff still had 11 days under our Local Rules to respond to it. LCvR 7(b).

1. *Supervision of Depositions Generally*

■■ The premise of defendant's motion is that it is an appropriate exercise of the judicial supervision of discovery to issue a protective order to prevent counsel from asking a question that is irrelevant or so ineptly phrased that it can be condemned as vague or ambiguous. The problem with that premise is that, as I have pointed out in this very case, the federal courts do not permit a witness to refuse to answer a question that is irrelevant. Instead, the witness must answer the question, subject to the objection. On the other hand, if SAA has it right, federal courts should go to the opposite extreme and, when a 30(b)(6) deposition is taken, not only permit the witness to refuse to answer an irrelevant question but rule in advance as to what topics are relevant.

Alternatively, a party can secure a protective order under Rule 26 upon a showing of good cause. Although those words are designed to be malleable, all can agree that insisting that a federal court act to prevent the possibility that irrelevant questions will be asked at a deposition is completely unprecedented and would require the court to micro-manage the discovery process. That is the exact opposite of what a court is supposed to be doing in enforcing Rule 1. In any event, the worst that can happen when a party asks a 30(b)(6) witness questions about an irrelevant topic is that the process will be unnecessarily time-consuming. While there are more pleasant ways to pass the time, that kind of "burden" has to be endured in any deposition because, as I have explained, a witness must answer even irrelevant questions in a non–30(b)(6) deposition. To have one rule for the ordinary deposition and a completely different one for 30(b)(6) depositions makes no sense, particularly when some lawyers hardly need encouragement to make discovery more expensive and when, given crowded dockets, the court may not be able to act as promptly as the parties hope on a motion to preclude the party taking the 30(b)(6) deposition from asking certain questions. Moreover, there is time and power enough after the deposition has been taken to punish the party or lawyer who wasted everyone's time. Thus, without precluding the possibility of reaching a different decision in a case where there is more obvious abuse, I will exercise my discretion in this case and deny SAA's motion for a protective order.

I appreciate that there remains open the necessity of taking one or more 30(b)(6) depositions as to the remaining 27 topics. I feel an urgent necessity to supervise that process for several reasons. I have reviewed carefully the list of topics in *Plaintiff's Rule 30(b)(6) Notice of Video Deposition to Defendant's Office of the Senate Sergeant at Arms and Doorkeeper*. In most respects, it certainly does not describe with "reasonable particularity the matters on which examination is requested." Fed.R.Civ.P. 30(b)(6). Instead, each of the topics reads like an interrogatory or a section of a request for production of documents. For example, topic 20 defines a "topic" as: "The sum and

substance of all conversations between Ann Harkins and any employee of the SAO concerning Mr. Banks from January 1, 2002 and March 20, 2002, the date of those conversations, where those conversations took place, the reason for those conversations, the person who requested that a conversation (which includes any meeting) take place." It almost goes without saying that this "topic" is absurdly overbroad; conversations about Mr. Banks' hair style or his new suit cannot possibly be relevant to this lawsuit.

I am afraid that many of the other "topics" suffer from the same or similar problems. However, I have neither the time nor the inclination to "flyspeck" them. Instead, I will wipe the slate clean and require the parties to attempt in good faith to arrive at a mutually agreeable listing of topics for the 30(b)(6) depositions that are to be taken and the 30(b)(6) witnesses who will speak to them. In arriving at that list, I expect the parties to find topics that will insure that the 30(b)(6) depositions are meaningful exercises in ascertaining information that has not been previously discovered or are necessary to ascertain the position SAA took or takes as to factual and legal issues that have arisen. By taking these depositions, plaintiff is certifying to me that he will not ask questions that duplicate questions previously asked of other witness or seek information that he already has by virtue of responses to other discovery devices. The list of topics, that will have to be approved by me before the deposition is taken, will have to be consistent with that certification.

### 2. *The McComish Deposition*

I now turn to the McComish deposition.

■ Plaintiff seeks an extraordinary remedy, the preclusion from offering testimony at trial as to the subject matter of Plaintiff's February 10, 2004 Rule 30(b)(6) Notice of Deposition. Since that Notice covers every issue in the lawsuit, plaintiff is, in effect, seeking a default judgment. Such relief requires a showing that the violation of the rule or of the court's orders pertaining to discovery is so gross that no lesser sanction is appropriate. *Zenian v. District of Columbia*, 283 F.Supp.2d 36 (D.D.C.2003). I have

reviewed the McComish deposition carefully, and I cannot find in it any basis for the remedy plaintiff seeks. To the contrary, I find that McComish answered conscientiously and completely the questions as to the specific things she did with reference to plaintiff's demand that he be accommodated because of his asserted disability. I appreciate that plaintiff takes her to task for not investigating certain matters, but she is under no obligation to investigate anything if she otherwise answers the questions on the basis of her knowledge. The courts understandably guard against the gamesmanship of a corporation, for example, naming as a 30(b)(6) witness a person who knows nothing about the topics and does nothing to inform himself about them so that his deposition threatens to be a series of cynical "I do not know" statements. *See e.g., In re Vitamins Antitrust Litigation*, 216 F.R.D. 168 (D.D.C. 2003). There was nothing like that whatsoever in this case. The witness explained what she did in reference to the processing of plaintiff's request for an accommodation and identified other persons who may have other information about that topic and the somewhat related issue of plaintiff's applying for workmen's compensation. Once she spoke of what she did and of what others did or might know, she fulfilled her responsibility. She had no responsibility to investigate plaintiff's case for him.

I certainly appreciate that she refused to answer certain questions as being beyond the scope of the topics she agreed to testify to and refused to answer others on the grounds of privilege. It is my intention, however, that once the parties have agreed upon the proper topics for the remaining 30(b)(6) depositions, they will then agree upon what 30(b)(6) witnesses will speak to what topic. Once that is done, the areas that McComish refused to discuss will have been covered by other witnesses, rendering her refusal moot. As to the issue of privilege, it is my repeated experience that I cannot rule on the legitimacy of a claim of privilege in a deposition without knowing the context of the situation, which can only be secured by my asking the witness the circumstances in which the privileged communication took place. Hence, unless it is unnecessary to do so, I intend to re-

commence her deposition before me, and I will rule on the application of the privileges claimed as to each question in which they are asserted. I will, however, postpone resuming the deposition in my presence until all the other 30(b)(6) depositions are taken, so that I can ask McComish additional questions. It may well be that these other depositions may render the assertion of the privilege insignificant and the resources that would be consumed in resolving whether or not the privilege was properly claimed can be conserved until then.

H. *Plaintiff's Motion to Compel Defendant to Fully and Completely Respond to Plaintiff's Third Request for Production of Documents and Provide Identified Documents* ("P's 2nd Mot. to Compel") [# 61] *and Plaintiff's Motion to Compel Defendant to Provide Privilege Log and Motion for an Order that Defendant Has Waived Privilege as to Responsive Documents Not Produced* ("P's 3rd Mot. to Compel") [# 71]

1. *Background History*

On July 30, 2003, Banks served his first document request on SAA. *See* P's 3rd Mot. to Compel, Exhibit A. On September 16, 2003, SAA responded. *See Id.*, Exhibit B. Rather than provide the responsive documents along with a privilege log, SAA withheld the documents and indicated that the documents were privileged. *Id.*

On November 18, 2003, Banks served his second document request on SAA. *See id.*, Exhibit C.

On January 12, 2004, Banks served his third document request on SAA. *See id.*, Exhibit D. Banks also requested by letter that a privilege log be provided prior to plaintiff's taking of depositions in this matter. On February 23, 2004, SAA responded to Bank's third document request, giving the same response that it had previously. *See id.*, Exhibit G.

On numerous occasions, Banks attempted to obtain a privilege log from SAA. *See id.*, Exhibits E, H, I, and J. Finally, on March 23, 2004, SAA provided Banks with a "compre-

hensive privilege log." *Defendant's Opposition to Plaintiff's Motion to Compel Production of a Privilege Log* ("D's 3rd Opp.") at 1.

2. *Analysis*

Banks seeks the production of a privilege log by SAA as well as an order from this court declaring that SAA has waived its assertion of any and all privileges as to these documents because the privilege log was not produced in a timely fashion. SAA counters that the motion is now moot because a privilege log has been produced. D's 3rd Opp. at 1. SAA also contends that it has not waived any privileges and that the log itself provides Banks with the information it needs to challenge, on a substantive level, the privileges asserted. *Id.* at 1–2.

a. *Documents*

Under Rule 26(b)(5), a party is required to submit a privilege log when asserting a privilege as to any otherwise discoverable material:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

■■■ In addition, the withholding of such a privilege log may subject a party to sanctions under Rule 37(b)(2) and may be viewed by the court as a waiver of any privilege or protection. Fed.R.Civ.P. 26 advisory committee's note. *See also Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 2 (D.D.C.1999).

In the case at bar, while SAA did ultimately provide Banks with a privilege log, it was not provided in a timely fashion. Nevertheless, a privilege log *was* provided and, therefore, the issue of waiver is not raised.

By the same token, SAA's only excuse for the five-month delay in providing the privilege log is that it took time to prepare it.

D's 2nd Opp. at 2. Under Rule 37(a)(4), the court may, in its discretion and after providing the non-prevailing party an opportunity to respond, award attorney's fees to the prevailing party following the court's resolution of a motion to compel. *See Cobell v. Norton*, 213 F.R.D. 16, 28–29 (D.D.C.2003). Although SAA did ultimately file a privilege log, I will order SAA to show cause why Banks should not be awarded attorney's fees and costs for having to file a motion to compel in the first instance.

Furthermore, the failure to file the privilege log occurs, according to plaintiff, in a disturbing context. Plaintiff complains that on March 26, 2004, he received 300 documents that were apparently responsive to requests that were served on July 30, 2003, September 16, 2003 and November 18, 2003. March 26, 2004 was six days before discovery was to close and after plaintiff had taken depositions which, he claims, might have been used to prepare for the deposition or interrogate the deponent.

The record does not reflect any reason for that delay. Nor did SAA ever ask for court permission to delay its response to the three requests for production of documents. The absence of any such court permission and plaintiff's claim of prejudice resulting from that delay compel me to require SAA to show cause why sanctions, in addition to the attorney's fees I am awarding, should not be awarded plaintiff. I expect SAA to justify the delay and the alleged failure to secure judicial permission and to rebut any claim of prejudice that plaintiff asserts. My Order will, therefore, allow ample time for plaintiff to respond and for SAA to reply.

### b. *Interrogatories*

 Unlike requests for the production of documents, an interrogatory must simply "be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Fed.R.Civ.P. 33(b)(1). As with requests for the production of documents, however, under Rule 33(b)(4), the failure to object in a timely fashion to interrogatories constitutes a waiver of any objections unless good cause is shown. *See Byrd v. Reno*, No. CIV.A. 96–2375, 1998 WL 429676, at *4 (D.D.C. Feb. 12, 1998). There is no claim by Banks that SAA failed to object in a timely fashion to any of the interrogatories, and therefore, waiver is not an issue.

 Plaintiff also claims, however, that SAA "failed to provide a witness log for the Interrogatory Communications which the Defendant claimed were privileged." Reply at 2. This claim is also made as to assertions of privilege made by a witness during a deposition. Thus, it appears that plaintiff thinks that once a party or a witness claims a privilege, that party or witness must file a privilege log. While privilege logs have become the universal means of claiming a privilege when a party claims that certain documents are privileged from discovery, there is nothing in the Federal Rules of Civil Procedure that requires the filing of a privilege log when a party claims a privilege as to a deposition question or an interrogatory. A party can comply with the requirement of Rule 26(b)(5) by otherwise communicating sufficient information to "enable other parties to assess the applicability of the privilege or protection." Thus, in a given case, a well-formed objection to a question, whether oral or written, may suffice. Since there is no obligation to file the "witness" or "interrogatory" logs plaintiff seeks, SAA cannot be sanctioned for not providing them.

### c. *In Camera Review*

As just noted, there are now 400 documents claimed to be privileged. I have reviewed the privilege log and find, as I invariably do, it is useless. *See Marshall v. District of Columbia Water & Sewage Authority*, 214 F.R.D. 23, 25 n. 4 and cases cited therein (D.D.C.2003). I will, therefore, order the production of all documents claimed to be privileged for my *in camera* evaluation.

### I. *Defendant's Motion to Reopen Plaintiff's Deposition and Memorandum of Law in Support Thereof* [# 70]

Counsel now representing SAA did not represent it at the plaintiff's deposition, and

he now seeks to reopen that deposition for another day. In opposition, plaintiff and his counsel filed sworn declarations attesting that plaintiff, who was in pain during his deposition due to recent surgery, agreed to continue the deposition until 8:25 p.m., an hour and one half hour longer than the seven hours permitted by Rule 30(d)(2), with the understanding that SAA would then complete the deposition and not have to resume it. SAA, by its new counsel, claims that it was the illness of the court reporter that caused the adjournment. Significantly, SAA does not tender an attestation either from the court reporter indicating that his or her illness was the reason for the adjournment or from prior counsel for SAA, denying the agreement plaintiff claims was made, Hence, plaintiff's and his counsel's attestations are unrebutted and carry the day. I will not permit the deposition to be resumed but will invoke what I consider Rule Number One of professionalism and civility among lawyers-a deal is a deal.

## CONCLUSION

A detailed Order accompanies this Memorandum Opinion.