TRI–STATE HOSPITAL SUPPLY CORPORATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ.A. No. 00–1463(HHK/JMF).

United States District Court, District of Columbia.

Feb. 28, 2005.

John Maguire Dowd, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for Plaintiff.

Lisa Sheri Goldfluss, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Kennedy for discovery. Currently pending and ready for resolution are 12 discovery motions, all of which will be resolved in this Memorandum Opinion and the accompanying Order.

### A. BACKGROUND

Tri–State Hospital Supply Corporation ("Tri–State" or "plaintiff") is a corporation that sells hospital supplies throughout the United States. In the early 1980s, it imported surgical equipment from suppliers in Pakistan. Tri–State paid the suppliers' invoices, but it also received rebates on the purchases. From 1984 until 1986, Tri–State consulted with a licensed customs broker about the value of the imported supplies it should declare to the United States Customs Service ("Customs"). Based on the broker's advice, Tri–State declared the prices that were reflected on the actual invoices and did not deduct the amount of the rebates it received.

In 1994, Tri–State was investigated criminally and civilly for allegedly falsifying forms it submitted to Customs. Customs officials searched Tri–State's headquarters and seized evidence relating to the value of the surgical instruments it had imported from Pakistan. Customs also issued civil penalty notices against Tri–State, and in 1996, Customs referred the case to the Department of Justice ("DOJ") for collection of the penalties. Thereafter, the DOJ brought suit against Tri–State in the United States Court of International Trade. During trial, the DOJ dismissed its fraud claim against Tri–State, and the court granted Tri–State's motion for judgment as a matter of law on the gross negligence count. The jury deliberated on the sole remaining claim—negligence—and returned a verdict in Tri–State's favor.

Tri–State then filed this civil action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) *et seq.* In its complaint, Tri–State alleges that the United States engaged in malicious prosecution and abuse of process when it issued penalty notices

against Tri–State and sued Tri–State for collection. The parties are currently engaged in discovery, and several issues have arisen regarding the scope of permissible discovery and the timing of each party's discovery obligations. Each motion is addressed below.

## B. PENDING MOTIONS

1. Defendant's *Motion for Enlargement of Time* [# 88] and Plaintiff's *Cross-Motion to Compel Responses to Document Requests* [# 90]

Defendant has moved for an extension of time to respond to plaintiff's First Request for Production of Documents. Attached to defendant's motion are two affidavits from attorneys, detailing the substantial efforts they have expended and the difficulties they have encountered in responding to the document requests.

Plaintiff opposed the motion and filed a cross-motion to compel, claiming that the government has unilaterally granted itself extensions by waiting until the night before production was due to file requests for extensions of time. In light of repeated failures by the government to meet discovery deadlines, plaintiff sought an order from the court: 1) directing plaintiffs to respond by March 26, 2004; 2) ordering defendants to reimburse plaintiff for its litigation costs in filing its motion to compel and in opposing two motions for enlargements of time; and 3) extending discovery *only* for plaintiffs until July 12, 2004 and maintaining the May 12, 2004 discovery cut-off for defendants.

Defendant then opposed the cross-motion to compel, claiming that it was moot because the government responded to the document requests on April 2, 2004. Defendant also argued that sanctions are inappropriate because the court never denied its motions for extensions of time and there was no bad faith on its part; rather, the government filed well-grounded motions because it was faced with a vast undertaking. The government also requested a new discovery deadline of July 12, 2004 for *both* parties.

■ The court grants the *Motion for Enlargement of Time nunc pro tunc* because the government provided a sufficient explanation of its need for an extension and it produced 17,000 pages of documents on April 2, 2004. The *Cross–Motion to Compel Responses to Document Requests* is granted in part and denied in part because a new discovery schedule will be established with May 2, 2005 as the deadline for both parties and for all discovery.[1] As for sanctions, the request is denied because neither motion for enlargement was ever denied, and even though neither was granted, defendant submitted two detailed affidavits explaining the problems it encountered in producing a massive amount of documents.

2. Defendant's Motion for Enlargement of Time [# 91]

Defendant sought two additional business days to provide the last of five privilege logs accompanying its response to plaintiff's First Request for Production of Documents. The motion was never opposed, and the court grants the motion *nunc pro tunc*.

3. Defendant's Motion for Entry of Order Protecting Personal Privacy Interests of Non–Parties [# 94]

■ Defendant has moved to protect the personal information (*e.g.*, social security numbers, home addresses, phone numbers, and birth dates) of third parties whose information appears in certain documents responsive to plaintiff's discovery requests. Although defendant attempted to stipulate to a protective order with plaintiff, plaintiff insisted that defendant mark the word "confidential" on every document subject to the proposed order. Defendant claims that doing so

---

1. Plaintiff also complains that the government's late discovery responses were inadequate, but in this motion, it makes only two vague statements regarding the insufficiency of the government's responses, arguing that some responses were in an unreadable format and others consisted of plaintiff's own documents. Plaintiff made much more specific objections when it filed Plaintiff Tri–State Hospital Corporation's Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions, and I will address plaintiff's concerns regarding the government's discovery responses when I discuss that motion later in this Opinion.

would constitute an undue burden, especially in light of the resources already expended on this case. Specifically, defendant has produced over 100,000 pages of documents but did not review each document, page-by-page, for personal third-party information. According to the defendant, under its proposed order, the government would designate categories of information subject to the protective order, and plaintiff would have the opportunity to challenge such designations.

Plaintiff opposed the motion, claiming that it is unfair to shift to plaintiff the burden of sifting through the government's documents and determining which are entitled to confidential treatment. Plaintiff wants each party to mark the word "confidential" on every document it produces and believes should be subject to the proposed order. Plaintiff cites *Tavoulareas v. Piro*, 93 F.R.D. 24 (D.D.C. 1981), a case in which the court required a non-party producing documents pursuant to a subpoena to note the confidentiality of documents that were produced. According to plaintiff, if such a process is not burdensome for a non-party, it is not burdensome for a party defendant.

Plaintiff also cites two cases in which this court required the producing party to designate confidential information: *National Geographic Society v. International Media Association*, 1990 U.S. Dist. LEXIS 2315, at *29 (D.D.C.1990); *United States v. Philip Morris, Inc.*, 2000 U.S. Dist. LEXIS 18673, at *6 (D.D.C.2000). However, as the government points out, these cases dealt with private companies attempting to protect their own interests in their own financial, proprietary information. Thus, the companies were obviously in the best position to identify such information, whereas the identification of information at issue in this protective order requires no such expertise. The government also notes that the companies in the above-cited cases had a self-serving interest in maintaining the confidentiality of the information, whereas the government is seeking to protect third parties.

In the court's opinion, it is more reasonable for plaintiff to bear the responsibility of not disclosing the social security numbers, birth dates, and other personal information in any documents it intends to disseminate to people not included in the protective order, rather than have the government sift through thousands of pages of documents for this purpose. In Tavoulareas, the court required a non-party to "simply note the confidentiality of certain documents produced, based upon a relatively cursory review of the contents or source of the documents," before turning them over, but it also stated:

> We recognize that flexibility will be required to accommodate the practical needs of the discovery process with the standards enunciated (in this case), particularly where the discovery embraces a large quantity of documents. It may be appropriate, for example, for a trial court (on a proper showing) to issue a blanket protective order covering all documents in a large-scale exchange of files without prejudice to raising the merits of the protective order as applied to particular documents at a later time. If a party wishes to disseminate a particular document, he might then inform the opposing party (precisely as plaintiffs have done here). At that point the burden would revert back to the party resisting dissemination to establish "good cause" as applied to the particular document(s), consistent with the standards enunciated in this opinion. This procedure is commonly used to preserve parties' right to assert claims of privilege with respect to particular documents in complex cases, while at the same time facilitating needed discovery.

*Tavoulareas*, 93 F.R.D. at 29, 30 n. 4. This court finds *Tavoulareas*' reasoning to be persuasive. Accordingly, the court will grant defendant's motion and enter defendant's version of the protective order.

### 4. *Defendant's Motion for Protective Order* [# 95]

Defendant has moved for a protective order in responding to the deposition notice plaintiff served according to Federal Rule of Civil Procedure ("Rule") 30(b)(6). Defendant seeks a ruling by the court that certain categories of information are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, or unduly bur-

densome. *According to the government, it* has encountered significant difficulty in identifying appropriate deponents for the 20 separate categories of information identified in the deposition notice. Thus far, the government has identified 20 deponents from various federal agencies, and defendant argues that making sure that all of these deponents are reasonably educated about the topics presents a considerable burden. Thus, defendant wants the court to frame the subjects for testimony and order plaintiff to cooperate in devising a realistic 30(b)(6) discovery plan.

### a. Overbreadth of Categories 1, 3, 6, 8, 9, and 13

■ Categories 1, 3, 6, 8, 9, and 13 of plaintiff's 30(b)(6) notice contain the phrase "including but not limited to." According to defendant, this phrase renders each category overbroad. In support of its contention, defendant cites *Reed v. Bennett,* 193 F.R.D. 689 (D.Kan.2000), which states: "Where . . . the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed,* 193 F.R.D. at 692.

In *Reed,* the court found that the 30(b)(6) notice was overbroad because witnesses could be questioned about any number of topics "including but not limited to" those set out in the notice. *Id.* Thus, *Reed* dealt with a 30(b)(6) notice that listed certain categories but stated that the topics were not exclusive and questions would not be limited to those categories. In this case, plaintiff's notice enumerates a finite list of 19 specific categories and contains the phrase "including but not limited to" within each category. Thus, while the situation is slightly different, the problem is the same. The purpose of designating matters for the 30(b)(6) deposition is to give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition. Listing several categories and stating that the

inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all. Accordingly, this court will strike the "but not limited to" language within each of these categories.

### b. Duplicative Nature of Categories 2, 4, 5, 6, 8, and 15

Defendant argues that it would be unduly burdensome for it to produce a 30(b)(6) witness to testify about several topics that defendant has already addressed in its responses to interrogatories and document requests. Specifically, defendant contends that the following categories and other discovery responses are duplicative:

| | |
|---|---|
| Category 2 | Response to Interrogatory 18 |
| Category 4 | Documents responsive to Interrogatories 15 and 17 and in the deposition of Customs employee Frank Frysiek ("Frysiek")[2] |
| Category 5 | Response to Interrogatories 9 and 16 |
| Category 6 | Response to Interrogatories 9 and 10 and documents responsive to Document Request 5 |
| Category 8 | Documents responsive to Document Requests 6 and 7 and Interrogatory 12 |
| Category 15 | Response to Interrogatory 6 |

A review of the 30(b)(6) notice and the applicable interrogatories and document requests reveals that defendant is correct: each of the categories listed above is duplicative of information sought via other discovery mechanisms. Plaintiff claims, however, that defendant never provided straightforward answers to the interrogatories and document requests and to rule that these categories are duplicative and unduly burdensome would be to reward defendant for its failure to respond to discovery.

■ I have reviewed the defendant's answers to the interrogatories and document requests and find them to be sufficient. Nevertheless, I am aware of no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other

---

**2.** Plaintiff complains that Frysiek identified government reports regarding the reclassification of the Customs SAC Office in Washington, D.C. but those reports were never identified in defendant's responses to interrogatories or document

requests. In the interests of fairness and efficiency, I will order defendant to produce the documents to which Frysiek refers in his deposition at pages 169–171.

discovery devices. By its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery. There are, of course, only a finite number of pertinent events in any lawsuit, and how they occurred is a topic that may be pursued by all forms of discovery, even though the information provided by one form of discovery repeats and duplicates information yielded by another. Thus, the fact that information has been provided to plaintiff concerning a particular category does not, in itself, make that category an impermissible subject of a 30(b)(6) deposition.

■ Of course, under Rule 26(c), the court may prevent a party from wasting its opponent's time and thereby causing undue burden and expense. Fed.R.Civ.P. 26(c). In other cases, when necessary because of the way parties have conducted discovery, I have insisted that a 30(b)(6) deposition, which by its nature can be time-consuming and inefficient,[3] be productive and not simply an excuse to seek information that is already known. *See Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (ordering the parties to find topics that will "insure that the 30(b)(6) depositions are meaningful exercises in ascertaining information that has not been previously discovered" and ordering the party seeking discovery "not [to] ask questions that duplicate questions previously asked of other witness or seek information that he already has by virtue of responses to other discovery devices"). However, *Banks* does not stand for the proposition that a court should review every 30(b)(6) deposition notice on a topic-by-topic basis to entertain objections that certain categories cover information that has already been provided in response to other discovery devices. Such a time-consuming intrusion by the court in a process that should be managed by counsel should, if it is ever to occur, be limited to extreme situations where the

right to take such a deposition is being abused.

In the ordinary course, there is no need for such an intrusion. Counsel have every motivation to act efficiently; their clients, after all, are paying for their time, and counsel have many professional obligations. Moreover, the clock is ticking against the seven-hour limit in Rule 30(d)(2), and every moment wasted on a useless question is lost and cannot be used to ask a meaningful question.

In this case, I will not preclude plaintiff from asking the 30(b)(6) witnesses about certain topics because those topics were the subject of previous discovery requests. Instead, I will await the conclusion of the 30(b)(6) depositions and entertain, if necessary, any claim that the power to take them was abused by the manner in which the depositions were conducted, to include the claim that they were nothing more than duplicative of the discovery already provided.

### c. Disputes Regarding the Permissible Scope of Discovery

As stated in the Federal Rules, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Here, the parties dispute the scope of the discovery that plaintiff is entitled to seek in this action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) *et seq.*

#### 1. Entities About Whom Plaintiff Can Seek Discovery

■ The parties dispute whether plaintiff can seek discovery about government agencies other than the Customs Service and Commercial Litigation Branch of the Justice Department's Civil Division, which were identified in Tri–State's administrative claim, supplement, and amendment.[4] According to

---

**3.** *In re Ind. Serv. Orgs. Antitrust Litig.,* 168 F.R.D. 651, 654 (D.Kan.1996).

**4.** In the portion of the 30(b)(6) notice labeled "Designated Matters," plaintiff indicates that Category 1 concerns "[a]ll resources" devoted to

certain investigations and proceedings, including all financial costs "incurred by Customs and the other departments and agencies of the United States." *Defendant's Motion for Protective Order* ("Def.'s Mot. for P.O."), Ex. B, at 4. Plaintiff's First Interrogatory is to the same effect. *Plain-*

defendant, any information regarding these entities is simply irrelevant.

Plaintiff, on the other hand, seeks discovery about resources spent by other departments and agencies "because it directly relates to Customs' ulterior and malicious motive in pursuing a baseless penalty claim against Tri–State," an element of its malicious prosecution claim. *Plaintiff Tri–State Hospital Supply Corporation's Opposition to Defendant's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition Notice* ("Pl.'s Opp'n to Mot. for P.O.") at 6–7. According to plaintiff, Customs involved other government agencies in a five-year unproductive investigation relating to the alleged overvaluation of surgical instruments imported from Pakistan, and use of other agencies' resources provided a motive for Customs to pursue a knowingly false penalty claim in order to justify an otherwise failed investigation.[5]

As stated by this Circuit, under the FTCA, "[t]he presentment requirement provides that '[a]n action shall not be instituted against the United States' for damages caused by the negligent or wrongful act of any employee of the government 'unless the claimant shall have first presented the claim to the appropriate Federal agency.'" *Bembenista v. United States*, 866 F.2d 493, 499 (D.C.Cir.1989) (quoting 28 U.S.C. § 2675(a)). The court further stated that "[t]he applicable regulations, found at 28 C.F.R. § 14.12(a) (1988), provide that an FTCA claim shall be deemed 'presented' when a federal agency receives an SF–95 'or other written notification of an incident, accompanied by a claim for money damages in sum certain.'" *Id.*

Thus, it is clear that plaintiff can only recover for claims that it has presented in its administrative claim. However, it does not follow that plaintiff is precluded from seeking discovery about actions taken by other agencies that were not named in the administra-

tive claim if that information is relevant to the intent and actions of the government employees and agencies that were named in the administrative claim. In other words, it does not matter whether the "other" agencies' actions can form the basis for relief as long as their actions or situations helped motivate employees whose actions *can* be the basis of relief. Discovery of this information will therefore be allowed.

■ I must note that defendant also argues that the concept of *Customs'* motives is legally meaningless because, under 28 U.S.C. § 1346(b)(1), the United States can be liable only for the wrongful acts or omissions of its employees. *See In re Texas City Disaster Litig.*, 197 F.2d 771, 776 (5th Cir.1952), *aff'd, Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Sickman v. United States*, 184 F.2d 616, 619–20 (7th Cir.1950). Presumably, defendant means to argue that plaintiff must show that the actions of other agencies are relevant to the motives of certain individuals employed by Customs, named in the administrative claim, and able to be the basis of the United States' liability.

In its supplemental memorandum, however, plaintiff points out that elsewhere it has stated that the "use of resources of other agencies provided a motive for *Customs officers* involved to pursue a knowingly false penalty claim against Tri–State in order to justify their otherwise failed investigation." *Plaintiff Tri–State Hospital Supply Corporation's Opposition to Defendant's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition Notice* ("Opp'n to 30(b)(6)") at 7. Defendant states that this self-serving statement cannot justify the burden and expense contemplated by plaintiff's Rule 30(b)(6) deposition notice, which would permit plaintiff to depose numerous federal government agencies.

---

tiff Tri–State Hospital Corporation's Memorandum in Support of Its Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions ("Pl.'s Mot. to Compel"), Ex. 8, at 2.

5. Note that this argument is much more thoroughly fleshed out in the pleadings filed in relation to *Plaintiff Tri–State Hospital Corporation's Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions* [# 112].

■ Unfortunately, it seems that the parties have engaged in protracted disputes over semantics by differentiating between Customs' actions and the actions of Customs employees. An agency can only act through its employees, and although, under the FTCA, the government will only be liable for the actions of individual employees, to limit discovery as defendant has suggested is inappropriate. Accordingly, information about how other agencies' actions affected the motives of Customs employees is discoverable.

### 2. Employees About Whom Plaintiff Can Seek Discovery

■ The FTCA is governed exclusively by the doctrine of *respondeat superior*. Thus, the United States can be liable only for the wrongful acts or omissions of its employees. 28 U.S.C. § 1346(b)(1) (stating that "the district courts ... have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"). *See also Reuber v. United States,* 750 F.2d 1039, 1046–47 (D.C.Cir.1984) (noting, in the context of discussing proper venue for plaintiff's claim, that "the United States can be held liable under the FTCA only for the tortious acts of its employees ... and [plaintiff] can point to no act in the District by any government employee that caused him any tortious injury") (internal citations omitted); *Jaeger v. United States,* 394 F.2d 944, 946–47 (D.C.Cir.1968) (noting that "appellant's case rest[ed] solely on failure to redeliver the property ... [and because] the owner did not deliver the property to any particular Government employee, [the court did] not think the action [was] within the contemplation of the 'negligent or wrong-

ful act or omission' clause of the Federal Tort Claims Act").

Defendant states that, under 28 U.S.C. § 2680(h),[6] the only federal employees through whom the United States could be found liable for malicious prosecution and abuse of process are investigative or law enforcement officers. In addition, the administrative claim limits the scope of this district court action, and the claim pertained exclusively to Customs. 28 U.S.C. § 2675(a); *Reply in Support of Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition Notice* ("Reply to 30(b)(6)"), Exs. B, C. Thus, according to defendant, discovery requests should be limited to the activities of Customs investigative or law enforcement officers (*i.e.,* employees with the power to search, seize evidence, or make arrests) whom plaintiff alleges committed malicious prosecution or abuse of process.

Defendant also points out that, at plaintiff's 30(b)(6) deposition, plaintiff's president stated that plaintiff has factual support for allegations against three Customs agents: Timothy Bethel ("Bethel"), Jennifer Gibbs ("Gibbs"), and Jon Batt ("Batt"). *Id.,* Ex. D.[7] No others were named in response to interrogatories. *Id.,* Ex. E. Defendant further argues that plaintiff cannot file a complaint and *then* attempt to discover a cause of action. According to defendant, unless plaintiff can articulate some factual ground to assert that the acts of other Customs officials are implicated in this action, plaintiff's unduly burdensome Rule 30(b)(6) deposition should not stand. Specifically, defendant maintains that Categories 16, 17, and 19— and portions of other categories—are not likely to lead to discoverable information because they pertain to acts of federal employees other than Bethel, Gibbs, and Batt.

Plaintiff, on the other hand, argues that discovery cannot be limited to the law en-

---

6. "For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

7. In its motion, defendant claimed that plaintiff should be limited to discovery regarding four

officers, including Raymond Kelly ("Kelly"), the Commissioner of Customs during the relevant time period. In its reply, defendant argues that discovery should be limited to three officers. Although defendant never states its reasons explicitly, defendant may have adjusted its position because of this deposition testimony by Tri–State's president.

forcement officers identified by defendant because many other Customs officials received knowingly false reports of investigation and other information from these three or four officers and those employees took action against Tri–State. Additionally, in its pleadings with respect to another motion, plaintiff contends that whether certain employees are law enforcement officers is a decision for the court to make, based on a complete record; it is not a decision for defendant to make. In its supplemental memorandum, plaintiff further contends that defendant mischaracterized the deposition testimony of plaintiff's 30(b)(6) deponent and president, Thomas Archipley ("Archipley"). According to plaintiff, Archipley did not identify only three people engaged in wrongdoing. In fact, Archipley also named Virginia Brown ("Brown") and Charles Ressin ("Ressin") as persons who engaged in wrongdoing, and he named Customs Special Agent Richard Crocker ("Crocker") as a person who engaged in malicious prosecution. Archipley Dep. at 118, 152. He also stated that there may be others, whose names he did not know or who had not yet been identified, that committed similar acts. *Id.* at 146.

Regardless of the specific arguments as to each of the individuals who were either named or not named in the claim, complaint, and Archipley deposition,[8] this dispute boils down to a much more fundamental issue. Plaintiff argues that it would be patently unfair to limit the scope of its 30(b)(6) deposition of the government because Tri–State was unable to identify all individuals who engaged in malicious prosecution *before* it is able to depose the 30(b)(6) witness. Defendant insists that, "[b]efore imposing upon defendant a deposition notice of the nature and magnitude that is the subject of defendant's motion for protective order, plaintiff needs to articulate at least *what* it is, if not

*who* it is, that plaintiff is complaining about. Both defendant, and now this Court in adjudicating that motion, should be able to identify the specific conduct that constitutes malicious prosecution and abuse of process that this case is about." *Defendant's Response to Plaintiff Tri–State Hospital Supply Corporation's Motion for Leave to File Supplemental Memorandum in Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition Notice* at 7.

In the court's opinion, plaintiff should be allowed to use discovery to ascertain facts underlying its complaint, to determine whether other individuals acted illegally, and to flesh out its case. Even if these individuals were not named in the complaint and cannot be the basis of the United States' liability, it would be improper for the court to curtail discovery regarding their actions because their actions may be relevant to the actions of Bethel, Gibbs, Batt, and others whose actions *may* be imputed to the United States. Additionally, there may be other employees who, in the court's opinion, are investigative or law enforcement officers and whose actions may also serve as the predicate for plaintiff's relief. On this record, however, it is impossible to determine whether that will be the case, and it is inappropriate to limit discovery to the three or four Customs employees defendant has identified.

5. *Plaintiff Tri–State Hospital Supply Corporation's Motion for Leave to File Supplemental Memorandum in Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition Notice [# 107]*

Plaintiff seeks permission to file a supplemental memorandum in response to De-

---

**8.** According to defendant, neither Brown nor Ressin was a law enforcement officer at the time of the events in question. Accordingly, their actions cannot be the basis of a claim of malicious prosecution. As for Crocker, he was not named in the administrative claim or complaint, and defendant maintains that plaintiff should not be allowed to pursue discovery regarding this agent. Additionally, Tri–State's grounds for any claim of malicious prosecution based on Crock-

er's actions rest on Crocker's presence at the search of plaintiff's business premises, Crocker's alleged knowledge that plaintiff was maintaining that it had conferred with a Customs broker, and Archipley's opinion about the steps Crocker should have taken to investigate the matter. Archipley Dep. at 118–19. According to defendant, these allegations fail to satisfy even the most rudimentary requirements for a claim of malicious prosecution.

fendant's Reply to Plaintiff's Opposition to Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition Notice because, in that pleading, defendant raised several allegations for the first time. When plaintiff filed its opposition, plaintiff's 30(b)(6) deposition had not yet been completed, and defendant addresses this deposition in its reply.

In fairness, the court grants this motion and deems the supplemental memorandum filed. Additionally, the court notes that it considered defendant's response to plaintiff's supplemental memorandum when ruling on these matters.

6. *Plaintiff Tri–State Hospital Supply Corporation's Motion for Sanctions Arising from Defendant's Refusal to Designate and Produce a Rule 30(b)(6) Witness for Deposition* [# 100]

■■■ In its motion, plaintiff claims that, throughout discovery, defendant has engaged in "inexcusable delays and game-playing." *Plaintiff Tri–State Hospital Supply Corporation's Motion for Sanctions Arising from Defendant's Refusal to Designate and Produce a Rule 30(b)(6) Witness for Deposition* ("Pl.'s Mot. for Sanctions") at 1. Plaintiff claims that defendant has violated the court's scheduling order numerous times by seeking extensions of time at the eleventh hour and, in effect, granting itself unilateral extensions of time. Plaintiff specifically complains about defendant's failure to produce a 30(b)(6) witness for the May 11, 2004 deposition.

The record reveals the following time line. On April 2, 2004, Tri–State served notice of the 30(b)(6) deposition. Although the notice originally set the deposition date for April 22, 2004, it was later rescheduled, by joint agreement, to May 11, 2004 because of the late production of numerous documents. However, on May 6, the government indicated its intention not to produce any 30(b)(6) witness at the May 11 deposition. The government then indicated, on the evening of May 6, that it might produce a witness at the May 11 deposition and that it would notify plaintiff on May 10—the day before the deposition—about whether any witness would testify.

Plaintiff then informed defendant that it would reschedule the deposition unless defendant could confirm by noon on May 7 that it would produce a 30(b)(6) deponent on May 11. On May 7, the government notified plaintiff that it would not produce a witness for the May 11 deposition. Then, on May 10, defendant filed an emergency motion seeking a stay of the 30(b)(6) deposition, stating that the notice imposed an excessive burden on defendant. That motion was granted by the court on the same day via a minute entry. Although the court did not await an opposition from plaintiff, it did have before it many other pleadings that addressed issues surrounding the 30(b)(6) deposition. Defendant moved for reconsideration of the stay, and the court denied the motion, again via a minute entry, on May 25, 2004.

During this time period, it appears that defendant was trying to secure plaintiff's consent to a 30–day extension so that the parties could negotiate a resolution to the scope of the deposition notice, which defendant contends was overly burdensome. But, plaintiff claims in its motion, and in many of the pleadings it has presented to the court, that defendant has engaged in repeated abuses of the discovery process in this case, including its refusal to produce a 30(b)(6) witness. Accordingly, plaintiff seeks an order from the court precluding defendant from offering in any pretrial proceeding or trial any evidence relating to the topics specified in plaintiff's Rule 30(b)(6) notice of deposition. Alternatively, plaintiff seeks a unilateral extension of the discovery deadline. Plaintiff also seeks reimbursement of the costs and fees it incurred in bringing the motion for sanctions.

Under Rule 37, the court has the authority to award sanctions, but it must always be mindful that any sanctions it awards must be in proportion to the wrongs done. This Circuit has stated:

The central requirement of Rule 37 is that "any sanction must be 'just,'" which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation. The choice of sanction should be guided by the "con-

cept of proportionality" between offense and sanction.

*Bonds v. District of Columbia,* 93 F.3d 801, 808 (D.C.Cir.1996) (internal citations omitted).

Here, defendant should have either: 1) clarified its inability to produce 30(b)(6) witnesses much earlier in the process, or 2) produced a 30(b)(6) witness for the issues that could be addressed while reserving its right to pursue a protective order for the other issues raised in the notice. Although it did neither of these things, it did move the court for an order staying the deposition, and the court granted that motion. Additionally, it did try to work with plaintiff's counsel to tailor the scope of the 30(b)(6) deposition so that it would be more manageable.

Because any sanctions imposed by the court must be proportional to the offense, the sanctions that plaintiff seeks are excessive. Accordingly, defendant will *not* be precluded from offering evidence relating to the topics specified in plaintiff's Rule 30(b)(6) notice of deposition, nor will plaintiff be granted a unilateral extension of the discovery deadline.

Finally, it must be noted that the government has now had several months to comply with discovery while several motions have been pending. Accordingly, the Order that accompanies this Opinion sets out discovery deadlines that are final.[9]

7. *Plaintiff Tri–State Hospital Corporation's Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions* [# 112]

a. The Scope of Permissible Discovery

Plaintiff filed this motion to compel because it claims that the government has con-

sistently failed to provide straightforward answers to Tri–State's interrogatories, document requests, and requests for admissions. It also contends that the government has improperly withheld documents and raised clearly inapplicable objections. Pl.'s Mot. to Compel at 2.

Defendant vehemently objects to the motion, accusing plaintiff of using discovery as "a vehicle for a fishing expedition[10] so that plaintiff may find a basis for its $3.2 million action against the government." *Defendant's Opposition to That Portion of Plaintiff's Motion to Compel Written Discovery Responses That Challenges Defendant's Responses to Plaintiff's Discovery Requests as to Which Defendant Has Not Included Governmental Privilege as a Basis for Objection* ("First D. Opp'n") at 3. As discussed earlier, the government emphasizes that the only acts that may serve as the basis for liability in this case are the acts of the Customs law enforcement officers, as defined by defendant, who were named in the complaint: Bethel, Gibbs, Batt, and Kelly. *Id.* at 4. Additionally, the government contends that plaintiff has asserted a limited number of acts that could be the basis for a malicious prosecution or abuse of process claim, namely: 1) that Bethel allegedly received an affidavit from plaintiff's treasurer and a list of its broker's employees who serviced plaintiff during the relevant time period but did not contact those employees or interview plaintiff's treasurer; 2) that Gibbs allegedly amended by affidavit her previous deposition testimony, which plaintiff claims was perjurious; and 3) that Batt allegedly issued a pre-penalty notice without addressing Tri–State's argument that it relied on its Customs broker in defense to charges that it violated Customs laws. *Id.* at 5. Accordingly, defendant contends that all discov-

***

9. Thus, although the court will not grant plaintiff's request for sanctions at this point, the court expects both parties to abide by the revised, court-ordered deadlines.

10. Plaintiff, however, points out that it has named two specific causes of action—malicious prosecution and abuse of process—and is not on a "fishing expedition" to discover a claim, as the government contends. *Plaintiff Tri–State Hospital Supply Corporation's Memorandum in Reply to Defendant's Opposition Memoranda to the Motion to Compel* ("Reply to Mot. to Compel") at 11. In support of its claims, plaintiff notes that it provided a detailed complaint, interrogatory responses, deposition testimony, and 30(b)(6) deposition testimony. *Id.* Plaintiff indicates that it will continue to supplement the factual record to support its claims once discovery moves forward. *Id.*

ery should be limited to information about these alleged acts by these Customs law enforcement officers. *Id.* at 6–7.

Plaintiff responds by stating that the government's potential liability is not limited to these individuals and these actions. Plaintiff points out that it named numerous employees, including twelve who are mentioned by name, in its complaint and that its 30(b)(6) deponent named other employees alleged to have been engaged in wrongdoing. Plaintiff also believes that other individuals may have engaged in malicious prosecution or abuse of process and that it will be able to identify those individuals once the government provides witnesses for its 30(b)(6) deposition.

As for defendant's argument that discovery should be limited to individuals it deems to be law enforcement officers, plaintiff claims that the court, not the defendant, will determine who are law enforcement officers on the basis of a complete record. On June 1, 2001, in ruling on the government's motion to dismiss in this case, Judge Kennedy stated that the government may be liable not only for the acts of the investigative or law enforcement officers identified by the government, but also the acts of the twenty agents involved in the execution of a search warrant at Tri–State's headquarters (if they had the authority to execute the search) as well as Customs officials Helen Salamon, Robert Pisani, and Charles Ressin. *Tri–State Hosp. Supply Corp. v. U.S.*, 142 F.Supp.2d 93, 97–99 (D.D.C.2001), *rev'd in part on other grounds*, 341 F.3d 571 (D.C.Cir.2003). Additionally, according to plaintiff, discovery of information "regarding the precise role played by different government employees . . . and . . . information that sheds light on which employees qualify as law enforcement officers, is well within the parameters of [ ] Rule 26." Reply to Mot. to Compel at 4. Furthermore, even if the government's liability is limited to the three (or four) employees identified by defendant, discovery should "not necessarily be confined only to those individuals, since they did not . . . act in isolation from their colleagues." *Id.* at 4 n. 11.

On a related note, plaintiff takes issue with the government's list of three actions that

may be the subject of discovery. According to plaintiff, as articulated in its complaint, many other actions are at issue, including Jeffrey Reim's assertion that Tri–State committed a prior violation at the Port of El Paso and the actions of Customs officials who allegedly disseminated false information about Tri–State and wrongly pursued its criminal prosecution. *Id.* Finally, plaintiff argues that it is entitled to discovery regarding actions taken by Bethel, Gibbs, and Batt other than those identified by the government. *Id.* at 5–6 (citing plaintiff's complaint).

As indicated earlier in this Opinion, the parties' fundamental dispute boils down to whether plaintiff may seek discovery regarding information that pertains to government employees, entities, and events beyond those identified by the government. In this court's view, to limit discovery as the government has suggested is clearly improper and would prevent Tri–State from discovering information to which it is entitled under Rule 26. Accordingly, the court will order defendant to produce all documents responsive to plaintiff's discovery requests, unless the documents are privileged. For documents claimed to be privileged, the government must submit the materials for *in camera* review so that the court may determine whether they ought to be produced in their entirety or in redacted form. *See* discussion, *infra.*

### b. Specific Privileges Asserted by Defendant

#### 1. The Attorney–Client and Work–Product Privileges

In response to several interrogatories and requests for production of documents, the government has refused to provide information because it claims that the information is protected by the attorney-client and work-product privileges. Tri–State argues that these privileges are inapplicable because of the crime-fraud exception.

The tests for establishing the crime-fraud exception to each of these privileges are slightly different. In the context of determining whether the crime-fraud exception applies to the attorney-client privilege,

"the court must consider whether the client 'made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act,' and establish that the client actually 'carried out the crime or fraud.'" *In re Sealed Case,* 223 F.3d 775, 778 (D.C.Cir.2000) (quoting *In re Sealed Case,* 107 F.3d 46, 49 (D.C.Cir.1997)). To establish the exception to the work-product privilege, courts focus on the client's "general purpose in consulting the lawyer rather than on his intent regarding the particular communication." *Id.* at 778–79.

■ In determining whether the exception applies, "courts do not require proof beyond a reasonable doubt that someone has committed a crime or fraud. Rather, they undertake a simplified two-step inquiry. First, there must be a prima facie showing of a violation sufficiently serious to defeat the work-product privilege. Second, the court must find some valid relationship between the work product [at issue] and the prima facie violation." *In re Sealed Case,* 676 F.2d 793, 814–15 (D.C.Cir.1982). The party asserting that the exception applies, and therefore the documents should be produced, must offer evidence that would show the government's misconduct "if believed [by] the trier of fact." *In re Sealed Case,* 754 F.2d 395, 399 (D.C.Cir.1985).

In making these determinations, the court must proceed cautiously. As I have pointed out previously:

> If legal advice loses its privileged status merely because the opponent claims that the advice was sought to conceal a fraud, the privilege quickly evaporates. If that were the law, few clients would dare talk to lawyers, because the privilege would disappear the moment their opponent charged a cover-up. Confronted with a claim that the advice was sought to further a crime or fraud, this Circuit insists upon a showing of a prima facie case that the client was planning or engaged in a crime or fraud when the legal advice was sought before it will invoke the crime/fraud exception, lest the privilege disappear only because a crime or fraud is charged. *In re Sealed Case,* 754 F.2d 395, 399 (D.C.Cir. 1985). *See also In re Sealed Case,* 107

F.3d 46, 50 (D.C.Cir.1997) ("But the government had to demonstrate that the Company sought the legal advice with the intent to further its illegal conduct. Showing temporal proximity between the communication and a crime is not enough."). It has to follow that plaintiff must make a prima facie showing of a [crime or fraud] before the privilege will yield.

*Nesse v. Pittman,* 202 F.R.D. 344, 351–52 (D.D.C.2001) (footnote omitted).

■ According to Tri–State, it has made a sufficient factual showing that the government engaged in fraud for several reasons, including: 1) Special Agent Gibbs recanted her sworn testimony after a government trial attorney indicated that, unless she did so, a large portion of the government's claim against Tri–State would be time-barred; 2) the government falsely claimed that Tri–State committed a prior violation of Customs laws, which had the effect of increasing Tri–State's penalty amount; 3) the government also attempted to extract an admission from Tri–State that it had committed prior violations at the Port of El Paso when Customs knew no such violation had occurred; 4) Customs repeatedly tried to collect penalties from Tri–State on entries barred by the statute of limitations; 5) while claiming that Tri–State overstated the value of its imports, the government knew that Tri–State actually paid the invoice price and declared that price to Customs; and 6) the government attempted to collect penalties even though it knew that Tri–State had consulted with a customs broker and had, therefore, exercised reasonable care.

Defendant insists, however, that "plaintiff has made no factual showing of any crime, fraud[,] or other requisite misconduct by defendant. Even plaintiff's allegation that Special Agent Jennifer Gibbs committed perjury, the only act ... that even colorably could be deemed a 'crime,' is nothing but pure speculation on plaintiff's part." First D. Opp'n at 33.

The interrogatories and document requests in response to which the government asserted the attorney-client and work-product priv-

ileges [11] include: First Interrogatory No. 2, which asks the government to identify each person at Customs who reviewed Tri–State's reliance-on-broker defense and describe what each did; First Document Request No. 34, which seeks all documents that relate or refer to Customs' decision to impose the maximum fine on Tri–State; First Document Request No. 35, which seeks all documents that support or refer to Customs' July 31, 1996 decision that there was no evidence that Tri–State consulted a licensed broker, including all documents on which Customs relied; First Document Request No. 36, which requests a memorandum referenced in the July 31, 1996 decision; and First Document Request No. 37, which seeks all documents that relate to Customs' decision to refer the penalty claim to Customs' Chief Counsel for enforcement.

Clearly, the information sought is related to Tri–State's allegations of misconduct, and plaintiff has shown some evidence to support these allegations and justify the application of the crime-fraud exception.[12] However, it is impossible to know, without reviewing the documents *in camera,* whether the government consulted with attorneys with the intent to further any unlawful or fraudulent acts or whether its general purpose in consulting with attorneys was to commit a fraud. Accordingly, the government must submit all responsive documents, along with a reasonably detailed privilege log, to chambers for an *in camera* review. *See United States v. Zolin,* 491 U.S. 554, 570–72, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis

adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.") (internal citation omitted); Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 444 (4th ed.2001).

**2. The Deliberative Process Privilege**

■ Tri–State argues that the government has improperly asserted the deliberative process privilege in response to several document requests and interrogatories. According to plaintiff, the privilege is not applicable in this case because there is reason to believe that government misconduct occurred.[13] Indeed, plaintiff has asserted that the government engaged in malicious prosecution and abuse of process, and its complaint sets forth extensive facts describing the government's allegedly wrongful actions.

■ The deliberative process privilege protects from disclosure materials that contain communications that are both predecisional and deliberative. *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C.Cir.1993). In determining whether material is protected by the privilege, "the critical question is whether 'disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion and thereby undermine the agency's ability to perform its functions.'" *Eugene Burger Mgmt. Corp. v. U.S. Dep't of Housing and Urban Dev.,* 192 F.R.D. 1, 5 (D.D.C. 1999) (citations omitted).

■ The deliberative process privilege yields, however, when government misconduct is the focus of the lawsuit. In such

---

11. The government also asserted the deliberative process privilege in response to each of these requests.

12. Note that, upon review of the documents, I will have to consider whether the crime-fraud exception should yield upon a showing of other tortious conduct. Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 448–54 (4th ed.2001).

13. Even if the privilege were applicable, plaintiff claims that the government has improperly asserted the privilege because it failed to establish a formal, considered, detailed claim of privilege.

According to defendant, the obligation to formally invoke the deliberative process and law enforcement privileges does not arise until a motion to compel has been filed. Additionally, defendant attached two affidavits to its opposition to the motion to compel, setting forth in great detail the grounds upon which the privileges are asserted. *See* Second D. Opp'n, Exs. A, B. Defendant is correct: the government had no obligation to formally invoke the privilege in advance of the motion to compel. *In re Sealed Case,* 121 F.3d 729, 741 (D.C.Cir.1997). *See also Tuite v. Henry,* 98 F.3d 1411, 1417 (D.C.Cir. 1996).

instances, the government may not use the deliberative process privilege to shield its communications from disclosure. Thus, "if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur." *In re Subpoena Duces Tecum Served on Office of the Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C.Cir.1998) (citations omitted). Simply put, when there is reason to believe that government misconduct has occurred, the deliberative process privilege disappears. *Id.; In re Sealed Case*, 121 F.3d 729, 746 (D.C.Cir.1997). *See also In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C.Cir.1992); *Alexander v. FBI*, 186 F.R.D. 170, 177 (D.D.C.1999) (citations omitted).

██ Under the government misconduct exception, there is no need to engage in a balancing test because the privilege does not apply at all. However, in order to invoke such an exception, "the party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon government misconduct." *Chaplaincy of Full Gospel Churches v. Johnson*, 217 F.R.D. 250, 257 (D.D.C.2003) (citations omitted), *rev'd in part and vac'd in part on other grounds, In re England*, 375 F.3d 1169 (D.C.Cir.2004).

██ Accordingly, defendant argues that the government misconduct exception does not apply—and the deliberative process privilege remains intact—because plaintiff incorrectly relies on unverified allegations it made in its complaint. Second D. Opp'n at 15–16. Defendant also points out that none of the documents claimed to be protected by the deliberative process privilege was authored or received by the Customs law enforcement officers alleged to have engaged in wrongdoing in this case. *Id.* at 16. According to defendant, the Bonner Declaration makes clear that "none of the deliberations refer-

enced [in the documents at issue] are [*sic*] alleged to have been the subject of the misconduct that serves as the basis of this tort suit." *Id.*

Indeed, the Bonner Declaration provides the specific factual basis for the government's assertion of the deliberative process privilege with respect to the fourteen documents for which the privilege was claimed.[14] Bonner Dec. *passim.* See also Second D. Opp'n at 6–14. The documents discuss, *inter alia:* 1) whether, on the basis of plaintiff's petition, Customs should remit the penalty the agency assessed under the statute; 2) how to process the petition and handle the administrative case; 3) how to proceed with collecting the penalty assessed against plaintiff; 4) how to articulate the violation; and 5) how to calculate the degree of mitigation. Commissioner Bonner also attested that the documents "reveal [Customs'] pre-decisional communications and deliberations regarding legal advice, policy matters, or both, including whether and the extent to which the agency would grant mitigation and the evaluation and consideration of the information presented by the petitioner." Bonner Dec. ¶ 23. He also stated that "[d]isclosure of such communications would impede the free flow of essential advice and recommendations necessary for effective agency decision-making." *Id.*

In the court's opinion, these documents seem to reflect agency communications that are both predecisional and deliberative. However, this lawsuit is based on the government's decision to pursue criminal and civil penalties in light of the information it had. Since the government's alleged misconduct in making these determinations is the basis of this lawsuit, the deliberative process privilege may yield. But, it is impossible to know, without reviewing the documents *in camera*, whether the documents are in fact privileged and whether they lose their privi-

14. The government claimed the deliberative process privilege in response to one interrogatory and several document requests. First Interrogatory No. 2 asks the government to identify each person at Customs who reviewed Tri–State's reliance-on-broker defense and describe what each did, including each person's attempt to investigate the defense. First Document Requests Nos. 34–37 relate to Customs' decision to remit or mitigate the civil penalty issued against Tri–State in 1996 and to the disposition of Tri–State's petition in response to a notice of penalty urging grounds for remission or mitigation—a decision committed to the executive as a matter of discretion. Second D. Opp'n at 3–4; Bonner Dec. ¶ 8.

leged status because they contain information about the government's misconduct. Accordingly, the government must submit all responsive documents, along with a reasonably detailed privilege log, to chambers for *in camera* review.[15] *See Zolin,* 491 U.S. at 570–72, 109 S.Ct. 2619.

### 3. The Law Enforcement Privilege

In response to several interrogatories and requests for production of documents, the government has refused to produce information and makes a formal claim of law enforcement privilege in regard to three categories of documents.[16] These formal claims are supported by the Affidavit of Marcy Forman ("Forman"), the Director of the Office of Investigations, U.S. Immigrations and Customs Enforcement ("ICE"). The three categories are: 1) several chapters of the Special Agent Handbook, 2) the Fraud Investigations Guide, and 3) the Fraud Investigations Booklet and related training material.

According to the government, these materials contain policy and guidance on law enforcement investigation techniques, including how to conduct and document fraud investigations, interviews, case management, and searches and seizures. The materials also contain information regarding government computer systems and databases. According to defendant, disclosure of this sensitive information could undermine current and future agency investigations because it would enable potential witnesses and targets to anticipate and circumvent agency investigation techniques, avoid detection, and gain unauthorized access to the government's computer system. In addition, because these techniques are similar to those used by other agencies, disclosure would not only compromise Customs' mission, but also the operations of many other agencies. The government further maintains that significant government interests would be threatened even if the materials were produced subject to a protective order. Forman Dec. ¶ 9–13; Second D. Opp'n at 20–25.

Thus, according to defendant, the government has weighty interests in keeping the above materials from disclosure, but the plaintiff's need for the information is not significant. Defendant further argues that plaintiff's limited interests in the materials could be addressed by an *in camera* review of the materials to determine whether they govern or relate to the specific actions taken by Bethel, Gibbs, and Batt that the government has identified as being the basis of this lawsuit.

■ Tri–State, on the other hand, argues that the law enforcement privilege is inapplicable [17] because the government's interest in non-disclosure of the purportedly privileged information is outweighed by plaintiff's need for access to the information. In balancing these interests, this Circuit has cited *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa. 1973), when listing the factors to be considered. These factors are:

---

**15.** It should be noted that these documents are the same documents for which the government has asserted attorney-client and work-product privileges.

**16.** Defendant also asserted a formal claim of privilege regarding the Law Course for Customs Officers. Forman Dec. ¶ 14; Second D. Opp'n at 27. However, the parties' dispute over this information has been resolved by joint stipulation.

Additionally, defendant originally asserted the law enforcement privilege in response to First Document Requests Nos. 1 and 2 and Second Document Request No. 1. First Document Requests Nos. 1 and 2 concern practices and procedures for conducting Customs investigations. Second Document Request No. 1 seeks all documents to which the government referred in its responses to First Set of Interrogatories. In response, the government provided most documents but failed to provide the Tri–State referral, memorandum, case file, litigation report, handouts with course slides, fraud handbook, and go-by documents because it asserted the law enforcement privilege. Tri–State seeks this information because the government has argued that many of its employees' actions were protected and immune because they fell within their discretionary function.

**17.** According to Tri–State, the government improperly asserted its privilege because, in responding to the discovery requests, it failed to indicate that the head of the department personally determined that the law enforcement privilege applies, failed to specify the information for which the privilege is claimed, and failed to explain why that information falls within the scope of the privilege. Pl.'s Mot. to Compel at 30. For the reasons explained in note 13, *supra,* these arguments lack any merit.

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re Sealed Case,* 856 F.2d 268, 272 (D.C.Cir.1988) (citations omitted). *See also Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1342–43 (D.C.Cir.1984) (citing *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973) and adopting the *Frankenhauser* factors in determining the merits of an assertion of the law enforcement privilege).

 Tri–State argues that, in this case, an analysis of the factors weighs in Tri–State's favor. Tri–State maintains that the first two factors are not implicated. As for the third factor, disclosure may promote, not chill, government self-evaluation and improvement. In addition, the investigative information is factual, the government investigation has ended, all criminal proceedings have already been resolved in Tri–State's favor, and no interdepartmental proceedings have arisen or may arise. Furthermore, Tri–State's claim is not frivolous and has survived

a motion to dismiss. Finally, the materials and information requested are important to Tri–State's case because they shed light on government employees' motives for engaging in the conduct at issue, they are in the government's possession, and they cannot be obtained from any other source.

In the court's opinion, given the crucial interests at stake, the court must review the materials *in camera* to determine which materials are relevant to the issues raised in this litigation. *See Zolin,* 491 U.S. at 570–73, 109 S.Ct. 2619. When reviewing the documents, however, the court will not limit its consideration to whether the documents are relevant to the three issues identified by defendant. If the materials are relevant to plaintiff's claims, the court will assess whether they should be produced according to the *Frankenhauser* factors listed above. Any information that is produced will, of course, be disclosed according to a protective order, the violation of which will constitute contempt of court.

### c. The Government's Qualification of Certain Answers to Tri–State's Request for Admissions

 Tri–State served upon the government certain requests for admissions. The government qualified its answers to two of the requests, and Tri–State now objects to the qualifications.[18]

Tri–State's Second Request for Admissions No. 15 states: "Tri–State made payment to its Pakistani suppliers of surgical instruments in the amount specified on invoices accompanying the merchandise." Pl.'s Mot. to Compel, Ex. 29, at 4. The government admitted these facts, but qualified its admission with the statement that the "payments that Tri–State made to its Pakistani suppliers did not reflect the negotiated price paid by Tri–State for the surgical instruments." *Id.,* Ex. 30, at 3. Tri–State argues that the government's additional non-responsive qualification violates Rule 36(a).[19]

---

**18.** Tri–State also complained about the government's response to its Second Request for Admissions No. 96. Although it believed its original response was appropriate, in the interest of judicial economy, defendant amended its response to "admit."

**19.** Tri–State also argues that Bethel already testified that Tri–State paid the higher price, and thus, the government cannot complain that the term is legally problematic. However, Tri–State fails to realize that the government is not bound by Bethel's testimony in a related manner, and

Tri–State's Second Request for Admissions No. 45 states: "During execution of a search warrant at Tri–State on March 28, 1994, Tri–State personnel showed Customs agents financial records reflecting that Tri–State made payments in the amount of the higher invoice price." *Id.,* Ex. 29, at 6. In response, the government stated: "Admit that during execution of a search warrant at Tri–State on March 28, 1994, Tri–State personnel showed Customs agents financial records reflecting that Tri–State made payments in *an amount higher than the negotiated price for the surgical instruments, and that those higher payments were reflected on the invoices that accompanied the merchandise and deny the remainder of this request for admissions."* *Id.,* Ex. 30, at 9 (emphasis added). Tri–State argues that the italicized language is unresponsive and violates Rule 36(a).

Under Rule 36, a party may serve a request for admission on another party on matters "that relate to statements or opinions of fact or of the application of law to fact.... [W]hen good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." Fed. R.Civ.P. 36(a).

 Where a party has answered or objected to a request, the party seeking discovery may move for a judicial determination of the sufficiency of the answers and whether any objections were justifiable. *Id.* Among other things, the court then considers whether any qualifications were made in good faith. *Thalheim v. Eberheim,* 124 F.R.D. 34, 35 (D.Conn.1988). Answers that are evasive must be amended. *Havenfield Corp. v. H & R Block, Inc.,* 67 F.R.D. 93, 97 (W.D.Mo. 1973).

Here, assuming that it is a legitimate exercise of judicial resources to engage in an analysis of the government's responses to plaintiff's requests for admissions,[20] I have

reviewed the responses and find that they are adequate. First, because the issue of "payment" is a key legal issue in the underlying case, the government should be allowed to respond in the manner it did. In *Harris v. Oil Reclaiming Co., Ltd.,* 190 F.R.D. 674 (D.Kan.1999), a discovery request asked Mr. Harrison to admit that a certain document was a list of checks "that [he] signed as Bill E. Harrison." *Harris,* 190 F.R.D. at 676. The court found that the request "implied that the checks were signed by Mr. Harrison in his individual capacity and [put] capacity at issue in the request. Therefore, Mr. Harrison's response, that the check at issue and all other checks referred to in the request were made 'in his capacity' as an agent or officer of Inc., [was] appropriate as a good faith qualification of the answer in order to 'fairly meet the substance of the requested admission.'" *Id.* at 676–77 (citing Fed. R.Civ.P. 36(a)). Similarly, since the issue of payment is clearly at issue in this litigation, the government should be able to explain its position and not be bullied into an admission it does not want to make. Likewise, the government admitted that it produced documents to Tri–State that it claimed were related to Tri–State's alleged prior violation of the Customs law and clarified that, upon realizing its mistake, it informed Tri–State that another importer had made the previous violation, not Tri–State. I see nothing "evasive" about these responses, and they will be allowed to stand.

#### d. Other Disputes Regarding Interrogatories and Document Requests

#### 1. First Interrogatory No. 1 and Second Document Request No. 3

First Interrogatory No. 1 states:

Describe in detail all resources (including financial costs, time, manpower, travel, etc.) devoted to investigations, administrative penalty proceedings, and judicial pro-

---

the government is free to hold a different position regarding what constitutes "payment."

**20.** *Cf. Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.,* 265 F.Supp.2d 71, 73–75 (D.D.C.2003) (suggesting that courts should reserve review of whether a party's response to a request for ad-

mission is sufficient or evasive until the opposing party proves the fact and the qualified admission causes the opposing party to incur costs that it would not have incurred but for the evasive, qualified admission).

ceedings (including but not limited to the Tri–State Civil Penalty Action) relating to the alleged overvaluation or failure to declare rebates on goods imported from Pakistan (including but not limited to the alleged actions of Tri–State, Falcon Instruments, U.S. Surgical Supplies, Addmore Instruments, Shakeel Ahmad, Zamir Ahmed, Mian Tauqir Ahmed, Mohammad Ismail, and Mohammad Bashir) including but not limited to all financial costs incurred by Customs and the other departments and agencies of the U.S. and identifying all persons with knowledge of such costs and all documents or statistics collecting and/or quantifying such information.

Pl.'s Mot. to Compel, Ex. 14, at 6. Similarly, Second Document Request No. 3 requests documents relating to these issues and to the actions of S. Ahmed, Z. Ahmed, M.T. Ahmed, M. Ismail, and M. Bashir. Pl.'s Mot. to Compel, Ex. 9, at 2.

■ Plaintiff argues that the information it seeks is relevant to the government's motive for pursuing penalty claims against Tri–State. Specifically, plaintiff states: "Customs' expenditure of substantial resources over a five-year period provided a powerful motive for the *Customs officers involved* to pursue knowingly false penalty claims against Tri–State in order to justify their otherwise failed investigation." [21] Pl.'s Mot. to Compel at 6. According to Tri–State, this information is relevant to the failed money-laundering investigation in which no one was convicted even though the government touted the case as a Class 1 major money-laundering case. Reply to Mot. to Compel at 7–8. The failure of the money-laundering case, plaintiff claims, bears on Customs employees' motives because Customs tracks enforcement

statistics and grants rewards on that basis. Additionally, during 1994 and 1995, Customs' Washington, D.C. office was in jeopardy of losing its Special Agent in Charge status due to large reorganization. Thus, according to Tri–State, when the money-laundering investigation failed, Customs employees had a powerful motive to pursue civil penalties against entities that were able to pay them.

In response to this interrogatory and document request, the government provided information regarding: 1) the number of hours Customs spent on investigations and proceedings, 2) the number of hours the DOJ spent on litigation against Tri–State, and 3) incomplete information regarding costs incurred by the DOJ in the Court of International Trade litigation. The government produced no documents. Now, Tri–State wants the court to order the government to: 1) describe costs incurred and resources expended by other agencies that participated in the investigation, 2) identify people with such knowledge, and 3) produce documents reflecting such costs and expenses.

As I have already indicated, the costs incurred by the agencies of the United States in the proceedings identified in this interrogatory bear on the motive that may have animated Customs agents to engage in what plaintiff sees as a malicious prosecution and abuse of process. Moreover, despite the government's insistence that plaintiff's motive theory has no merit, it is unfair to ask plaintiff prove its case as a condition to securing discovery. Accordingly, the defendant's objection to this interrogatory is overruled.[22]

### 2. First Interrogatory No. 10

■ First Interrogatory No. 10 states: "Describe in detail any rewards, awards … and inducements issued or given to Customs

---

21. The government maintains that plaintiff's "motive" theory of relevance fails because, contrary to plaintiff's claims, Customs' investigation was not entirely fruitless; indeed, Ismail, S. Ahmed, M.T. Ahmed, and Bashir were convicted of the lion's share of crimes in a 51–count indictment, most of which were upheld by the Fourth Circuit.

22. Defendant also argues that Tri–State has violated Rule 33(a) because this interrogatory alone has 135 subparts, even before multiplying the request as to other U.S. departments and agen-

cies. When distinct areas of inquiry are put together in a single topic, the interrogatory may constitute more than one interrogatory. *See Banks,* 222 F.R.D. at 10–11. However, when subdivisions of an interrogatory relate to a single topic, the subdivisions are deemed part of the same interrogatory. *Id.* In the court's opinion, Interrogatory No. 1 constitutes nine interrogatories—at most—because it asks about resources devoted to investigations of and proceedings against nine entities or individuals.

employees Bethel, Gibbs/Crandall, Crocker, and any other person involved in Tri–State's investigation and civil penalty action." Pl.'s Mot. to Compel, Ex. 14, at 8. In response, the government provided a computer printout with information regarding three Customs employees, claiming that the request was overbroad and vague with respect to any other employees because it could include someone whose involvement was as trivial as making photocopies for the case.[23] Plaintiff has now clarified its position and wants the government to provide information regarding 23 individuals it previously identified as participating in the investigation and proceedings.

In the court's view, the motivation of individuals who participated in the Tri–State matter is clearly relevant to this lawsuit, and therefore awards given to them for their actions in similar investigations and proceedings are also relevant. In other words, awards for participating in criminal or civil investigations are discoverable whereas awards for most congenial or neatest desk are not. Therefore, defendant must provide information indicating which, if any, of the 23 persons identified by Tri–State received any awards for activities similar to the activities that plaintiff claims they performed in the Tri–State case.

### 3. First Interrogatory No. 3

First Interrogatory No. 3 asks the government to identify each person at Customs who referred the penalty claim for collection and to describe each person's participation in that process. Plaintiff states that the government failed to identify the persons who provided the information upon which the Customs' referral was based, failed to describe the participation of the people it did identify, and failed to describe the information they reviewed in making the decision. Defendant maintains that, in its original response, it named the original case processor, support staff, preparer of the referral, and persons with whom the preparer consulted. In its amended response, it included a reference to the regulation in force at the time, which stated that the Fines, Penalties, and Forfei-

ture Officer had to refer the full penalty amount for collection if the amount offered in mitigation was not paid. I have reviewed defendant's response and find it sufficient.

### 4. First Interrogatory No. 5

First Interrogatory No. 5 asks the government to describe in detail the communications between or among Customs' D.C. office and Customs' Detroit office relating to Tri–State. The government did not identify any such communications, claiming that the request was overbroad, burdensome, and not reasonably related to the discovery of admissible evidence because it seeks information about communications spanning a decade between any DC Customs Office and any Detroit Customs Office, each of which is staffed by numerous employees.

In the court's opinion, the subject matter of the request is not overbroad or burdensome because the interrogatory is limited to communications related to Tri–State. However, given the number of employees involved, the court will limit the interrogatory to the 23 employees that have already been identified as being involved in the investigation of Tri–State.

### e. Request for Sanctions

Plaintiff requests reimbursement for fees and costs incurred in filing this motion under Rule 37(a)(4)(A). Defendant claims that there is no merit to the motion to compel and that the request for sanctions should therefore be denied, especially because plaintiff's counsel did not attempt to work out these discovery issues before filing them with the court and instead notified defense counsel that it was filing a motion to compel all of the answers it felt were inadequate, as indicated in its letters to counsel, and asked for defendant's consent to filing the motion.

In the court's opinion, an award of sanctions in this case is unjustified. Both parties have demonstrated an unwillingness to work together and resolve issues without judicial intervention, and I will not review each motion in a piecemeal fashion to determine

---

**23.** In its amended response, the government also stated that it is unaware that any Customs employee received an award from Customs specifically on account of the Tri–State investigation.

whether sanctions are an appropriate response to each of the pleadings.

8. Defendant's *Motion for Enlargement of Time* [# 113]

Defendant sought an enlargement of time to file a response to that portion of plaintiff's motion to compel that challenges defendant's responses based on governmental privilege. Defendant included an affidavit from the Chief of Staff of the U.S. Customs and Border Protection explaining that, because his official duties require extensive travel, Commissioner Bonner needed additional time to review the relevant documents and assert a formal claim of privilege. The motion is granted *nunc pro tunc*, and the pleading is deemed filed.

9. *Plaintiff Tri–State Hospital Supply Corporation's Consent Motion to File One Reply Brief in Connection with Tri–State's Motion to Compel* [# 119]

This was a consent motion and is granted. The reply brief is deemed filed.

10. *Defendant's Motion to Extend Page Limit in Connection with Defendant's Opposition to That Portion of Plaintiff's Motion to Compel Written Discovery Responses that Challenges Defendant's Responses to Plaintiff's Discovery Requests as to Which Defendant Included Governmental Privilege as a Basis for Objection* [# 123]

This motion was never opposed, and defendant's request is reasonable. The motion is granted.

11. *Plaintiff Tri–State Hospital Supply Corporation's Motion to Schedule Status Conference Before Magistrate Judge* [# 127]

This motion is granted. After the parties have had the opportunity to review this Opinion and comply with the accompanying Order, the court will hold a status conference. Accordingly, the parties will be instructed to contact chambers to schedule a status conference at a time convenient for both the court and the parties.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby, **ORDERED** that

1. Defendant's Motion for Enlargement of Time [# 88] is **granted *nunc pro tunc***; and it is **FURTHER ORDERED** that

2. Plaintiff's Cross–Motion to Compel Responses to Document Requests [# 90] is **granted in part and denied in part**; and it is **FURTHER ORDERED** that

3. Defendant's Motion for Enlargement of Time [# 91] is **granted *nunc pro tunc***; and it is **FURTHER ORDERED** that

4. Defendant's Motion for Entry of Order Protecting Personal Privacy Interests of Non–Parties [# 94] is **granted**; and it is FURTHER ORDERED that

5. *Defendant's Motion for Protective Order* [# 95] is **granted in part and denied in part**; and it is **FURTHER ORDERED** that

6. *Plaintiff Tri–State Hospital Supply Corporation's Motion for Leave to File Supplemental Memorandum in Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition Notice* [# 107] is **granted**; and it is **FURTHER ORDERED** that

7. Plaintiff Tri–State Hospital Supply Corporation's Motion for Sanctions Arising from Defendant's Refusal to Designate and Produce a Rule 30(b)(6) Witness for Deposition [# 100] is **denied**; and it is **FURTHER ORDERED** that

8. *Plaintiff Tri–State Hospital Corporation's Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions* [# 112] is **granted in part**

and denied in part; and it is **FURTHER ORDERED** that

9. Defendant's *Motion for Enlargement of Time* [# 113] is **granted** *nunc pro tunc;* and it is **FURTHER ORDERED** that

10. *Plaintiff Tri–State Hospital Supply Corporation's Consent Motion to File One Reply Brief in Connection with Tri–State's Motion to Compel* [# 119] is **granted;** and it is **FURTHER ORDERED** that

11. *Defendant's Motion to Extend Page Limit in Connection with Defendant's Opposition to That Portion of Plaintiff's Motion to Compel Written Discovery Responses that Challenges Defendant's Responses to Plaintiff's Discovery Requests as to Which Defendant Included Governmental Privilege as a Basis for Objection* [# 123] is **granted;** and it is **FURTHER ORDERED** that

12. *Plaintiff Tri–State Hospital Supply Corporation's Motion To Schedule Status Conference Before Magistrate Judge* [# 127] Is **Granted;** And It Is **FURTHER ORDERED** That

13. By March 15, 2005, Defendant Shall Submit For *In Camera* Review All Documents Claimed To Be Protected By The Attorney-Client, Work-Product, Deliberative Process, Or Law Enforcement Privileges. Defendant Shall Also Submit A Reasonably Detailed Privilege Log To Accompany The Documents; And It Is **FURTHER ORDERED** That

14. The parties contact chambers by March 15, 2005 to set up a time for a discovery status conference; and it is **FURTHER ORDERED** that

15. May 2, 2005 is the deadline for completion of ALL discovery.

**SO ORDERED.**